UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| DANIEL GREENWOOD, <br><br> Plaintiff, <br><br> v. <br><br> YALE APPLIANCE AND LIGHTING, INC., <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) C.A. No. 05-10605-JLT <br> ) <br> ) <br> ) <br> ) <br> ) |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF HIS OPPOSITION TO THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

I.   SUMMARY JUDGMENT IS DISFAVORED IN EMPLOYMENT DISCRIMINATION CASES.

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). There is no genuine issue of material fact unless "a reasonable jury could find for the party opposing the motion based on the record as a whole." *Pipitone v. United States*, 180 F.3d 859, 861 (7th Cir.1999) The court must construe all facts in the light most favorable to the non-movant and draw all justifiable inferences in favor of that party. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Summary judgment is a disfavored remedy in the context of employment discrimination cases, because the ultimate issue of discriminatory intent is a factual

question. *Brunner v. Stone & Webster Eng'g Corp.*, 413 Mass. 698, 705 (1992) ("where motive, intent, or other state of mind questions are at issue, summary judgment is often inappropriate"), *quoting Flesner v. Technical Communications Corp.*, 410 Mass. 805, 809 (1991). *Anderson v. Bessemer City*, 470 U.S. 564, 572-73 (1985). The ultimate question of the defendants' state of mind is elusive and rarely established by anything other than circumstantial evidence. *See Wheelock College v. Massachusetts Comm'n Against Discrimination*, 371 Mass. 130, 137 (1976). "Moreover, where there is direct evidence of discrimination, it is difficult for a defendant to obtain summary judgment." *Weston Smith, supra, citing Dominguez-Cruz v. Suttle Caribe, Inc.,* 202 F.3d 424, 429 (1st Cir.2000).

II.     THERE IS SUFFICIENT EVIDENCE FOR A RATIONAL FACTFINDER TO CONCLUDE THAT YALE INTERFERED WITH GREENWOOD'S SUBSTANTIVE RIGHTS UNDER THE FMLA, AND THAT IT TERMINATED HIM FOR TAKING MEDICAL LEAVE PROTECTED BY THE FMLA.

The Family Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601, entitles employees of covered entities up to 12 work weeks of medical leave during a twelve month period for several qualifying reasons, including to care for a "serious health condition". Here, Greenwood claims that Yale violated the FMLA by failing to restore him to his position upon his return from FMLA protected leave in July and August of 2004, and firing him for exercising his right to this leave. *Colburn v. Parker Hannifin/Nichols Portland Div.,* 429 F.3d 325, 330 (1st Cir. 2005); *Hodgens v. General Dynamics,* 144 F.3d 151, 159 (1st Cir. 1998); 29 U.S.C. §§ 2614(a)(1); 29 C.F.R. § 825.100(c).[1] To prevail on his claims

---

[1] The FMLA provisions creating entitlements to leave and restoration of job status have been referred to as "prescriptive rights", and violations of such rights can be established without establishing intent. *Hodgens, supra.* The anti-retaliation provisions of the law are referred to as "proscriptive rights", and make it unlawful for an employer to "interfere with, restrain or deny the exercise of any right . . . under [the

2

under the Family Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601, Greenwood must show:

>   (1)   Yale is a covered employer under the FMLA;
>   (2)   He had worked the requisite 1,250 hours in the 12 months prior to the questioned absences;
>   (3)   He had not already exhausted his 12 weeks of leave for this period;
>   (4)   The condition that caused him to miss work was a "serious health condition" as defined by the FMLA;
>   (5)   Yale was aware that Greenwood had to miss work as a result of this condition;
>   (6)   Yale terminated Greenwood for missing work as a result of a condition protected by the FMLA.[2]

Here, Greenwood can produce substantial facts to satisfy all of the legal elements of his FMLA claim. Summary judgment must therefore be denied. *Colburn, supra* at 330.

> A.   Yale Is A Covered Employer Under The FMLA, And Greenwood Had Worked The Requisite 1,250 Hours To Qualify For Leave.

With respect to the first element, there appears to be no factual dispute that Yale is a covered employer within the meaning of the FMLA. An "employer" within the meaning of the law is one which employs "50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year." Yale employed more than 50 employees while Greenwood was employed, and as a result, notified its employees of their statutorily mandated FMLA rights in its employee handbook.[3] With respect to the second element, Greenwood worked in excess of 40 hours for virtually every week he was employed by Yale, beginning in 1999.[4] Although he missed approximately 10 weeks of work between November 12, 2003 and January 26,

---

FMLA]." *Colburn v. Parker Hannifin/Nichols Portland Div.,* 429 F.3d 325, 330 (1st Cir. 2005); 29 U.S.C. § 2615(a)(1) and (2). *See also Nero v. Industrial Molding Corp.,* 167 F.3d 921, 927 )(5th Cir. 1999).
[2] *Hodgens, supra.*
[3] Pl.'s Ex. 3, Greenwood Aff.,/2 Handbook, Def.'s Ex. 7.
[4] Pl.'s Ex. 3, Greenwood Aff.,/2.

3

2004, in the twelve months he worked prior to the first day of his disputed FMLA leave on July 28, 2004, his total hours undisputedly exceeded 1,250, as he would have exceeded this total had he worked any more than 31.25 weeks in the preceding 52 week period.[5] Greenwood claims to have worked at least 40 weeks in this period, and therefore satisfies this element.

> B. Greenwood Had Not Exhausted His 12 Weeks of Leave Entitlement At The Time He Sought Leave In July of 2004.

Next, contrary to Yale's argument, the 21 days Greenwood worked light duty from January 22, 2004 to February 13, 2004, and for which he received full pay, cannot be counted against his 12 weeks of FMLA leave entitlement.[6] As a preliminary matter, it should be self-evident that a light duty assignment is not "leave", but work. Days worked cannot be counted as days on leave.

Regardless, there is no statutory or regulatory support for Yale's contention. The obscure District Court cases Yale has cited to support this point, as well as the federal regulation it has cited[7] address the issue of whether an employer can offer light duty as an

---

[5] Pl.'s Ex. 3, Greenwood Aff.,/2.

[6] Def.'s Br./5-6.

[7] See 29 CFR § 825-220(d); *Artis v. Palos Community Hospital*, No. 02-C-8855, 2004 WL 2125414, *6 (ND. Ill. Sept. 22, 2004) *Wright v. Owens-Illinois, Inc. etal.*,No. 2:02-C V-223, 2004 WL 1087359, *9 (S.D.Ind, May 14, 2004). Here is the text of the CFR section cited by the Defendant:

> Employees cannot waive, nor may employers induce employees to waive, their rights under FMLA. For example, employees (or their collective bargaining representatives) cannot ``trade off'' the right to take FMLA leave against some other benefit offered by the employer. This does not prevent an employee's voluntary and uncoerced acceptance (not as a condition of employment) of a ``light duty'' assignment while recovering from a serious health condition (see Sec. 825.702(d)). In such a circumstance the employee's right to restoration to the same or an equivalent position is available until 12 weeks have passed within the 12-month period, including all FMLA leave taken and the period of ``light duty.''

4

alternative to FMLA leave, without coercing an employee to surrender FMLA rights. None of the cited authorities stand for the proposition that light duty work is the same thing as leave, as Yale contends.

Here, it is not disputed that Greenwood missed work from November 12, 2004, until he returned to work on January 26, 2004, and therefore missed 10 weeks and 2 days of work.[8] He therefore had not exhausted his 12 weeks of FMLA leave when he was absent in July of 2004. Moreover, the additional time off he sought due to his diverticulitis, which encompassed his absences from July 29 to August 9, a period of 8 work days, still fell within the permissible 12 weeks in 12 months he was entitled to receive under the FMLA. Greenwood, therefore, can satisfy this element of his claim.

C. Greenwood's Diverticulitis Was A Serious Health Condition Under The FMLA.

Section 2611(11) of the FMLA defines a "serious health condition" as "an illness, injury, impairment, or physical or mental condition that involves (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider."

The Federal Regulations[9] expand on this definition, and provide in pertinent part that serious health condition includes

> (1) Inpatient care (i.e., an overnight stay) in a hospital, hospice, or residential medical care facility, including any period of incapacity (for purposes of this section, defined to mean inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefore, or recovery therefrom), or any subsequent treatment in connection with such inpatient care; or

---

[8] Pl.'s Ex. 3, Affidavit of Dan Greenwood/4.
[9] 29 CFR s 825.114

>   (2) Continuing treatment by a health care provider. A serious health condition involving continuing treatment by a health care provider includes any one or more of the following:
>
>   (i) A period of incapacity (i.e., inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefor, or recovery therefrom) of more than three consecutive calendar days, and any subsequent treatment or period of incapacity relating to the same condition, that also involves:
>
>   (A) Treatment two or more times by a health care provider, by a nurse or physician's assistant under direct supervision of a health care provider, or by a provider of health care services (e.g., physical therapist) under orders of, or on referral by, a health care provider; or
>
>   (B) Treatment by a health care provider on at least one occasion which results in a regimen of continuing treatment under the supervision of the health care provider.

Greenwood's diverticulitis was a serious health condition under more than one of the principles set forth above. First, consistent with subsection (1) of the Regulations, Greenwood was admitted and treated as an inpatient for his diverticulitis.[10] Next, consistent with subsection (2) and its subparts, Greenwood was required to follow up and continue to treat with Dr. Alzaim, and was incapacitated from work for more than three consecutive days by this condition. He was additionally treated more than two times by physicians, and was put under a "regimen of continuing treatment" under Dr. Alzaim's supervision.[11] Greenwood, therefore, can establish this element of his claim.

   D. Yale Was Aware That Greenwood Had To Miss Work As A Result Of A Serious Medical Condition.

Next, Greenwood can establish that Yale was aware that Greenwood had to miss work as a result of this condition. To establish that an employer has sufficiently been put on notice that an employee wishes to exercise FMLA rights, it is not necessary for an

---

[10] Def.'s Ex. 17.
[11] Discharge Plan, Def.'s Ex.'s 17, 19; and 21; Pl.'s Ex. 2, Alzaim Tr./18-19;

6

employee to specifically state FMLA leave is being sought. 29 C.F.R. § 825.302(c); ). *Wheeler v. Pioneer Developmental Services, Inc.*, 349 F.Supp.2d 158, 166 (D. Mass. 2004). *Brohm v. JH Properties, Inc.* 149 F.3d 517, 523 (6th Cir. 1998). It is sufficient for the employee to notify his employer that he needs leave for a FMLA covered reason. *Wheeler, supra; see also Manuel v. Westlake Polymers Corp.,* 66 F.3d 758, 764 (5th Cir. 1995). As this standard applies here, both Rapoza and Frazer knew that Greenwood had to be hospitalized for his diverticulitis, and that he had to seek ongoing treatment for it.[12] Rapoza was additionally aware that Greenwood claimed his condition was so severe that he could not work at his usual job, or even perform light duty, for an entire week, and that he was seeking continued treatment from his physician for this condition.[13]

Notably, "[o]nce an employee gives notice, and the circumstances suggest that the employee's request may involve FMLA leave, it becomes the employer's obligation to inquire further in order to determine if the requested leave qualifies for FMLA protection." *Wheeler, supra, citing Williams v. Shenango, Inc.,* 986 F.Supp. 309 (W.D.Pa.1997). In addition, although under the FMLA, an employer can request medical certification from the employee's health care provider, "[t]o exercise this right, the employer must give a written notice of a requirement for medical certification each time the employer requires it, 29 C.F.R. 825.305(a), and must advise the employee of anticipated consequences of the employee's failure to provide adequate certification, 29 C.F.R. 825.305(d). In general, the employer must request certification at the time the employee gives notice or, in cases of unforeseen leave, within two days after leave commences. 29 C.F.R. 825.305(c). Once requested, the employee must provide a copy of

---

[12] Pl.'s Ex. 1, Rapoza Tr./7-9.
[13] Pl.'s Ex. 1, Rapoza Tr.14, /20; 23-26; Pl.'s Ex. 4, Frazer Tr./25; Pl.'s Ex. 3, Greenwood Aff./.

7

such certification to the employer. 29 U.S.C. § 2613(a) (2004)." *Wheeler v. Pioneer Developmental Services, Inc.*, 349 F.Supp.2d 158, 166 (D. Mass. 2004).

Here, of course, Yale did not provide Greenwood with a written request to provide it with certification from his health care provider, and did not even give Greenwood a copy of the ubiquitous, pre-printed FMLA certification form published by the United States Department of Labor.[14] Significantly, the template of this form requires the employee's health care provider to provide a basis for claiming a "serious medical leave", and to establish a projected return date.[15] Rather than simply giving Greenwood the standard

---

[14] Pl.'s Ex. 3, Greenwood Aff./6.

[15] The standard FMLA certification form is published by the United States Department of Labor, and is attached her asPl.'s Exhibit 5. It is available for fee download at http://www.dol.gov/esa/regs/compliance/whd/fmla/wh380.pdf. The form requires the health care provider to establish an employee's entitlement to leave through a series of questions, e.g.:

> 3 .Page 4 describes what is meant by a "serious health condition" under the Family and Medical Leave Act. Does the patient's condition qualify under any of the categories described? If so, please check the applicable category.
> 4. Describe the medical facts which support your certification, including a brief statement as to how the medical facts meet the criteria of one of these categories:
> 5. a. State the approximate date the condition commenced, and the probable duration of the condition (and also the   probable duration of the patient's present incapacity if different):
>
> A "Serious Health Condition" means an illness, injury impairment, or physical or mental condition that involves one of the
>   following:
>
> 1. HospitalCare
>    Inpatient care (lie., an overnight stay) in a hospital, hospice, or residential medical care facility, including any period of
>    incapacity or subsequent treatment in connection with or consequent to such inpatient care.
> 2. Absence Plus Treatment
>   (a) A period of incapacity2 of more than three consecutive calendar days (including any subsequent treatment or period of incapacity relating to the same condition), that also involves:
>     (1)  Treatment two or more times by a health care provider, by a nurse or physician's assistant under direct supervision of a health care provider, or by a provider of health care services (e.g., physical therapist) under orders of, or on referral by, a health care provider; or
>     (2)  Treatment by a health care provider on at least one occasion which results in a regimen of continuing treatment under the supervision of the health care provider.

8

form the government makes available to every employer in the country, Frazer and Rapoza gave Greenwood nebulous verbal instructions for "documentation", and rejected out of hand the documents Greenwood provided them, in good faith, as insufficient to establish his entitlement to leave. This is in itself a violation of the FMLA.

    E.  There Are Sufficient Facts To Prove, Under A Summary Judgment Standard, That Yale Violated Greenwood's Rights By Failing To Reinstate Him.

With respect to his claim that Yale violated his rights under the FMLA by failing to reinstate him, Greenwood can prevail by showing by a preponderance of the evidence that he was entitled to leave; "no showing of employment intent is required." *Colburn v. Parker Hannifin,* 429 F.3d at 331. As demonstrated above, Greenwood has adduced sufficient evidence to show that he was entitled to FMLA leave for the period of July 29, 2004 to August 9, 2004. In summary, Yale is a covered employer under the FMLA, and as of July 28, 2004, Greenwood had worked more than 1,250 hours in the 12 months prior to July 28, 2004, and had not exhausted his 12 weeks of leave entitlement in this time frame. Moreover, Greenwood's inpatient and continued medical treatment for diverticulitis, about which his managers were indisputably aware, qualified Greenwood's condition as a "serious medical condition" within the meaning of the FMLA. Finally, Yale's non-written, nebulous requests for certification of his leave entitlement was legally deficient, and thus presents no obstacle to Greenwood's substantive claim. Accordingly, Yale's motion for summary judgment on Greenwood's FMLA claim must be denied.

    F.  There Are Sufficient Facts To Establish Greenwood's Retaliation Claim Under The FMLA.

---

. Had Yale provided Greenwood with this form, as it was obligated under the statute, Yale would have been precluded from claiming that Greenwood's medical certification was inadequate.

9

Even if Greenwood cannot prevail on his claim that Yale violated his "substantive" right to reinstatement under the FMLA, his retaliation claim is not foreclosed, as the law of this Circuit is "clear that an FMLA plaintiff may pursue a retaliation claim even if there is no claim of violation of substantive rights to FMLA leave." *Colburn*, 429 F.3d at 333. To prevail on his retaliation claim, Greenwood bears the burden of showing a "causal link between his termination and retaliatory animus on the part of [Yale]." *Id.* At 335. To establish this element, Greenwood can establish Yale's motivation under the familiar burden shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Id.* With respect to retaliation claims, under this framework an employee must establish a *prima facie* case of retaliation, namely, that he (1) exercised a protected right, (2) suffered an adverse action; (3) and that there is a possible connection between the exercise of the right and adverse action, "in that the two were not wholly unrelated." *Id.* at 336.

Here, Yale's termination letter leaves no dispute that Greenwood was fired for missing work between July 29 and August 9, 2004.[16] "In accordance with Yale's policy and procedures manual, for which you have signed for and agreed to abide by, we consider your absence from work for the days of August 4th, 5th and 6th without notification or authorization as a voluntary resignation."[17] As noted above, Greenwood has satisfied his *prima facie* burden for a retaliation claim by showing that he was entitled to leave on August 4th, 5th, and 6th, because he was under a physician's continued care for a serious health condition. By admittedly firing Greenwood for taking what he contends was protected FMLA on these days, Yale has conceded that there is a causal connection

---

[16] Termination Letter, Def.'s Ex. 22.
[17] *Id.*

10

with its decision to fire Greenwood and Greenwood's (alleged) exercise of his rights. Summary judgment, therefore, may not be granted on Greenwood's FMLA retaliation claim.

Even if the causal connection were not so obviously established, however, Greenwood could establish Yale's unlawful motivation under the pretext analysis available under *McDonnell Douglas* and its progeny. A plaintiff alleging unlawful retaliation under state and federal employment laws can prove his employer's illegal motivation by showing that the reasons advanced by the employer for taking an adverse decision are not true, or "pretextual." *Colburn, 429 F.3d 325, 333; Abramian v. Fellow of Harvard College*, 432 Mass. 107, 116-118 (2002); *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The reason an employee can establish unlawful motivation in this manner is because generally, employers do not act in a totally arbitrary manner, without any underlying reasons, especially in a business setting. *Abramian, supra.* Thus, when all legitimate reasons have been eliminated as possible reasons for an employer's actions, it is more likely than not the employer, who can generally be assumed to act only with some reason, based its decision on an impermissible consideration. *Id.* A showing that an employer's reasons are untrue gives rise, therefore, to an inference that an employee was a victim of unlawful discrimination. *Id.* That inference, together with a plaintiff establishing a *prima facie* case, provides a jury with a sufficient basis to return a verdict for a plaintiff. *Id.*

Here, the most obviously pretextual assertion the Defendant has made is set forth in its termination letter,[18] namely, that it fired[19] Greenwood because the days of work he

---

[18] Def.'s Ex. 22.

missed (August 4th, 5th and 6th) "were not authorized and you did not provide notification one hour prior to your shift as stipulated in Article D, these absences are considered unexcused absences."

The legitimacy of this assertion is immediately called into question, of course, because it cannot be disputed that Greenwood's managers at Yale, Frazer and Rapoza, knew at all times Greenwood was absent from work that Greenwood claimed he was suffering from a serious medical condition (diverticulitis), for which he had sought inpatient and ongoing medical care, that precluded him from working, even on light duty, for a period of at least a week.[20] Yale's assertion that it fired Greenwood, whom it had employed since 1999 without any absenteeism issues of any kind, because he did not call in an hour before work, is not credible. In fact, for the entire time Greenwood was absent, Frazer and Rapoza knew, through their communications with Greenwood, that he was absent because of his diverticulitis.

For example, Frazer knew that Greenwood's health was bad and his ability to report to work in jeopardy even before Greenwood was admitted to the hospital on July 28, because Greenwood notified him that he was going to seek medical treatment at the end of his run.[21] Moreover, Greenwood told Rapoza over the phone on Friday, July 30, that he had to seek continued medical treatment for his condition and could not work the following week.[22], and then again told Rapoza, in a face to face meeting, on Tuesday, August 3, that he could not perform any work, even light duty, and would have to miss

---

[19] Or in Yale's unusual interpretation of the personnel transaction that involuntarily separated Greenwood from employment, that Greenwood "voluntarily resigned" from work.
[20] *See generally* Plaintiff's Statement of Additional Material Facts, par.'s 6-18.
[21] Pl.'s Ex. 3, Greenwood Aff., see Plaintiff's Statement of Additional Material Facts, ¶ 6.
[22] Pl.'s Ex. 1, Rapoza Tr./9.

work for the rest of the week.[23] Furthermore, Greenwood provided documentation to Frazer and Rapoza on Friday August 6, and again on Monday August 9, to justify his need for leave.[24] Given the extent and detail of these communications, Yale's claim that it fired Greenwood for violating a provision of its handbook is plainly pretextual, and evidence of unlawful discrimination.

As further evidence of pretext, Yale's failure to provide Greenwood with a standard FMLA certification form, to consult with his physician,[25] or to make explicit the version of documentation it wanted to him to produce to justify his absence bears scrutiny from the court. As in the case of Yale's assertion that it fired Greenwood because he did not call in an hour before work, despite the fact that his managers clearly knew Greenwood had been hospitalized and claimed he could not work for a week, Yale's claimed reliance on the form of his medical documentation, and willful ignorance of the substance of his condition, impugns the legitimacy of its articulated reason for firing him. Had Yale been acting in good faith, it would have given Greenwood written instructions for certification (as required by the FMLA), and likely would have simply given him the standard DOL form for his physician to complete. Yale's failure to proceed in this rational manner with a long-time employee in good standing implies that its motivation for firing Greenwood was unlawful.

In summary, therefore, there is sufficient evidence, under a summary judgment standard, to support Greenwood's claim that he was unlawfully retaliated against by Yale. Greenwood easily establishes a *prima facie* case, and the causal connection between his protected activity and termination are established by Yale's termination

---

[23] Pl.'s Ex. 1, Rapoza Tr./28; 14
[24] Pl.'s Ex. 1, Rapoza Tr./16; Def.'s Ex. 19; Def.'s Ex. 21.
[25] Pl.'s Ex. 1, Rapoza Tr./21; Pl.'s Ex. 4, Frazer Tr./30.

13

letter. Yale's unlawful motivation can also be established by the pretextual nature of Yale's articulated reasons for firing Greenwood, namely, Yale's unsupported contention that Greenwood had not provided it with sufficient notice or documentation of his need to be absent from work due to a serious health condition. Yale's motion for summary judgment must therefore be denied.

II. THERE IS SUFFICIENT EVIDENCE FOR A RATIONAL FACTFINDER TO CONCLUDE THAT YALE DISCHARGED GREENWOOD BECAUSE OF HIS AGE OR BECAUSE HE EXERCISED HIS RIGHT TO TAKE LEAVE UNDER G.L C. 152.

    A. There Is Direct Evidence That Yale Discharged Greenwood On The Basis Of His Age Or Because He Exercised His Rights Under G.L. c. 152, Which Precludes The Entry Of Summary Judgment On His Claims.

There is additionally sufficient evidence to support Greenwood's claims that Yale terminated him because of his age or because he exercised rights under G.L. c. 152. Significantly, with respect to the element of illegal motivation for these claims[26], Greenwood has adduced direct evidence of illegal animus to support both of these claims.

This is important because an unambiguous discriminatory statement is direct evidence of discrimination. *Fernandes v. Costa Bros. Masonry, Inc.,* 199 F.3d 572,583 (1st Cir.1999). The presence of direct evidence removes a case from the *McDonnell Douglas* framework. *Weston-Smith v. Cooley Dickinson Hospital, Inc.*, 153 F.Supp.2d 62, 68 (D.Mass.2001), *citing Speen v. Crown Clothing Corp.,* 102 F.3d 625, 636 (1st Cir.1996). "When a plaintiff presents direct evidence of discrimination, the evidentiary burden shifts to the employer."  *Weston Smith*, 153 F.Supp. 2d at 69. Where there is

---

[26]. The basic elements of Greenwood's prima facie burden of establishing his age and 152 claims should be beyond dispute. With respect to the age claim, Greenwood was terminated from his job (adverse action), and was terminated when he was over the age of 40. *McDonnell Douglas, supra.* With respect to his claim under G.L. c. 152, it is likewise not disputed that Greenwood was fired, and that he had made a claim for and received worker's compensation benefits under G.L. c. 152. *Id.* Mr. Greenwood will focus on the disputed elements of causal connection and unlawful motivation in this memorandum.

14

direct evidence of discrimination, the employer must "affirmatively prove that it would have made the same decision even if it had not taken the protected characteristic into account." *Id, quoting Smith v. F.W. Morse & Co., Inc.,* 76 F.3d 413, 421 (1st Cir.1996); *citing Price Waterhouse v. Hopkins,* 490 U.S. 228, 258, (1989) (plurality opinion). "Given *Price Waterhouse,* direct evidence of discrimination makes it difficult, although not impossible, for a defendant to obtain summary judgment." *Weston Smith, supra, citing Dominguez-Cruz v. Suttle Caribe, Inc.,* 202 F.3d 424, 429 (1st Cir. 2000).

Here, with respect to Greenwood's age discrimination claim, on Friday, August 6, just one work day before Frazer decided to fire Greenwood on Monday, August 9, Frazer also asked Greenwood how old he was, and whether Greenwood thought he could still do his job because he had noticed that Greenwood had been out hurt quite often lately.[27] Frazer also stated that Greenwood might be getting too old to carry out his duties on the truck.[28] Frazer stated, "If that is the case, I have no other job duties for you." He added, "How much longer do you think you can be doing this job?"[29] Frazer's assertion that Greenwood was too old to continue to work as a driver, coupled with his almost contemporaneous decision to fire Greenwood, is direct evidence of discrimination, and precludes entry of summary judgment on Greenwood's claim. *See Weston-Smith v. Cooley Dickinson Hospital, Inc.*, 153 F.Supp.2d 62, 68 (D.Mass.2001**)** (and other cases cited above.)

Likewise, Frazer evinced direct evidence of illegal motivation when at the end of Greenwood's run on July 28, 2004, Greenwood told Frazer, whom he saw at the dispatch office, that he thought he would have to check himself into the hospital.[30] Frazer replied,

---

[27] Pl.'s Ex. 3, Greenwood Aff./7., ¶ .
[28] *Id.*
[29] *Id.*
[30] *Id.*/5.

"I paid to have your belly fixed last year. You better be in tomorrow."[31] Frazer's comment obviously related to Greenwood's hernia operation, which he was required to have as a result of an injury compensable under G.L. c. 152.[32] Frazer echoed this comment at the Friday meeting referenced in the previous paragraph, by stating that he had noticed that Greenwood had been out hurt quite often lately.[33] Again, coupled with Yale's virtually contemporaneous decision to fire Greenwood, this direct evidence of discrimination precludes the entry of summary judgment on this claim.

> B. Yale's Unlawful Motivation For Discharging Greenwood Can Be Inferred From The Pretextual Nature Of Its Articulated Reasons For Firing Him.

Alternatively, Yale's unlawful motivation for firing Greenwood, on the basis of his age or because he sought worker's compensation benefits, can be drawn circumstantially from Frazer's comments set forth above, coupled with the illegitimacy of its articulated reasons for firing him. *Colburn,* 429 F.3d 325, 333; *Abramian v. Fellow of Harvard College*, 432 Mass. 107, 116-118 (2002); *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). As to the pretextual nature of Yale's claim that it fired Greenwood because he did not call in one hour before work, Greenwood incorporates by reference his "pretext" arguments under the FMLA above, in which he has detailed the undisputed fact that his managers were fully aware that he would not be reporting to work, had a serious health condition that prevented him from working, and that Yale was willfully ignorant of the medical condition that was forcing him to miss work. In addition, a jury would be permitted to consider the timing of Greenwood's discharge on Monday and Frazer's discriminatory statements the previous Friday as

---

[31] *Id.*
[32] Def's Statement of Material Facts, and incorporated references, ¶¶ 20-21.
[33] Pl.'s Ex. 3, Greenwood Aff./7.

16

evidence of Yale's unlawful motivation. *Hodgens v. Gen. Dynamics Corp.*, 144 F.3d 151, 168 (1st Cir.1998). While timing is not dispositive, it "may give rise to an inference of causal connection." *Id*.

> C. The Presence Of Or Absence Of Comparators Does Not Defeat Greenwood's Claim On Any Count Of His Complaint.

Finally, contrary to Yale's argument, the presence of or absence of employees similarly situated to Greenwood, who might not have been subjected to similarly adverse actions, cannot, standing alone, defeat Greenwood's retaliation or discrimination claims. Significantly, evidence of disparate treatment is considered at the third stage of the *McDonnell Douglas* burden shifting ritual, and not in the *prima facie* case. *Koseris v. State of Rhode Island*, 331 F.3d 207, 213 (1st Cir.2003), *citing Conward v. Cambridge School Committee,* 171 F.3d 12, 19 (1st Cir.1999). As set forth in *Conward, supra* at 19-20:

> The appellant . . .. argues that, in a disparate treatment case, the trial court only should consider comparative evidence at the *third* stage of the progression, that is, after the plaintiff has put forward the standard prima facie case and the defendant has responded by articulating a legitimate, nondiscriminatory explanation for the adverse employment action. We agree with the appellant's premise: the district court's sequencing determination was in error, for the time to consider comparative evidence in a disparate treatment case is at the third step of the burden-shifting ritual, when the need arises to test the pretextuality *vel non* of the employer's articulated reason for having acted adversely to the plaintiff's interests. *See, e.g., Perkins v. Brigham & Women's Hosp.,* 78 F.3d 747, 749, 751 (1st Cir.1996); *Lanear v. Safeway Grocery,* 843 F.2d 298, 301-02 (8th Cir.1988); *see also McDonnell Douglas,* 411 U.S. at 804, 93 S.Ct. 1817 (noting that comparative evidence is "especially relevant" for a showing of pretext); *Mesnick,* 950 F.2d at 824 (citing evidence of "differential treatment in the workplace" as one **\*20** example of evidence properly used to show pretext).

17

Here, Yale's serial claims that it did not retaliate against employees older than 40, employees who sought worker's compensation leave, or an employee who sought FMLA leave, before and <u>after</u>[34] it fired Greenwood, does not immunize it from liability, but can only be considered as another factual argument supporting its assertion that it acted in a legitimate, non-discriminatory manner toward Greenwood. *Id.* From a summary judgment standard, this evidence should not be deemed sufficient to overcome, as a matter of law, the countervailing evidence of discrimination Greenwood has proffered here, including, but not limited to, the direct evidence of Frazer's discriminatory remarks; Yale's incredible assertion that it fired Greenwood for not calling in an hour before work on days its managers knew full well that he could not work; Yale's willful ignorance of Greenwood's actual medical condition; and the timing of Greenwood's dismissal, and exercise of his statutory rights. In light of this factual dispute, summary judgment should be denied.

## **CONCLUSION**

For the foregoing reasons, the Defendant's Motion for Summary judgment should be denied.

---

[34] The Plaintiff has moved to strike Yale's contentions about its treatment of employees after Greenwood was fired as irrelevant.

        Respectfully submitted,

        THE PLAINTIFF,

        By his attorney,


        s/Daniel W. Rice
        Daniel W. Rice
        GLYNN, LANDRY,
        HARRINGTON & RICE, LLP
        10 Forbes Road
        Braintree, MA 02184
        BBO # 559269
        (781) 383-0064

Dated: February 26, 2007