UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                   )
DANIEL GREENWOOD,                  )
                                   )
            Plaintiff,             )
                                   )  Civil Action No. 05-10605 JLT
v.                                 )
                                   )
YALE APPLIANCE AND LIGHTING, INC., )
                                   )
            Defendant.             )
_____)

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S
MOTION TO STRIKE DEFENDANT'S EXHIBIT 15**

**I.    INTRODUCTION**

Defendant, Yale Appliance and Lighting, Inc. ("Yale" or "Defendant"), hereby opposes the Motion of Plaintiff Daniel Greenwood ("Plaintiff") to Strike Exhibit 15 to the Defendant's Statement of Material Facts ("Facts"). In his Motion, Plaintiff contends that Exhibit 15, a memorandum co-authored by Lewis Frazer and James Rapoza (the "memo" or "Exhibit 15"), is inadmissible hearsay and contains written statements comprising levels of inadmissible hearsay. As discussed in detail below, Exhibit 15 is admissible as evidence under the business record and present sense impression exceptions to the hearsay rule. Moreover, there is no multiple hearsay problem because the writings contained in the memo reflect statements of its authors, which are admissible, and statements by Plaintiff, which are admissions of a party opponent.

In any event, if the Court nonetheless determines that Exhibit 15 is inadmissible hearsay, Yale has attached Affidavits from James Rapoza and Lewis Frazer testifying as to their personal knowledge about the events included in the memo upon which

Defendant relies in support of its Motion for Summary Judgment. (Rapoza Affidavit ("Aff."), attached hereto as Ex. 1; Frazer Aff., attached hereto as Ex. 2). Accordingly, should the court exclude the memo from the record evidence, Defendant refers the court to Rapoza and Frazer's affidavits as undeniably admissible sources of the same information

For these reasons, Plaintiff's Motion should be denied and the Court should properly consider Exhibit 15 as evidence in support of Yale's Motion for Summary Judgment.

## II. FACTUAL BACKGROUND

Defendant filed a motion for summary judgment on January 22, 2007. Appended to the Defendant's Facts submitted in support of that motion were twenty-three exhibits, marked "Exhibit 1" through "Exhibit 23." Plaintiff now moves to strike Exhibit 15, which is a memorandum dated August 10, 2004 and drafted by Frazer and Rapoza. As deposition testimony demonstrates, Mr. Frazer and Mr. Rapoza wrote this memo together to document the sequence of events surrounding Plaintiff's violation of Yale's attendance policy and his resulting termination.

## III. ARGUMENT

For consideration in a summary judgment motion, "documents must be authenticated by and attached to an affidavit that meets the requirements of Rule 56(e)." *Carmona v. Toledo,* 215 F.3d 124, 131 (1st Cir. 2000) (quoting *Orsi v. Kirkwood,* 999 F.2d 86, 92 (4th Cir.1993)). Rule 56(e) of the Federal Rules of Civil Procedure provides that affidavits "shall be made on personal knowledge, shall set forth facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to

testify to the matters stated therein." Fed.R.Civ.P. 56(e) *Gougen v. Textron, Inc.*, No. Civ. A 02-40245, 2006 WL 581022, at *2 (D.Mass. Mar. 10, 2006) ("The authentication requirement is rarely onerous; in many instances, a single sentence will suffice indicating that the document is what it purports to be"); *see also,* 10A Charles Alan Wright et. al, Federal Practice and Proc. § 2722 (3d ed.1998).

Plaintiff's Motion to Strike Exhibit 15 is baseless and completely misconstrues the Federal Rules of Evidence. It also fails to cite any case law in support of its rather conclusory proposition that Exhibit 15 is inadmissible. Simply put, the memo is admissible evidence properly before the Court. It was authenticated by Rapoza in his deposition testimony in satisfaction of the requirements of Fed.R.Evid. 901. It is admissible under the business record exception to the hearsay rule articulated by Fed.R.Evid. 803(6). In the alternative, it is also admissible pursuant to the present sense impression exception to hearsay. *See* Fed.R.Evid. 803(1).

Furthermore, by asserting that the memo creates a multiple hearsay problem, Plaintiff ignores an instrumental detail - that Rapoza and Frazer both prepared the memo - a fact which Rapoza stated under oath and Plaintiff's counsel himself procured in questioning Rapoza at his deposition about the circumstances of the memo's composition. (Rapoza Dep. at 32-33) ("Myself and Lewis Frazer sat in his office and…put as much detail down on paper as we could."). There are no levels of hearsay to separate and analyze; Rapoza and Frazer co-authored the memo and their statements contained in the memo are admissible. To the extent the memo contains statements made by Plaintiff, such statements are properly admissible as non-hearsay admissions of a party opponent. *See* Fed.R.Evid. 801(d)(2).

3

**A.    Exhibit 15 Is Admissible Under The Business Records Exception To The Hearsay Rule.**

**1.    The memo was identified and authenticated by Rapoza during his deposition.**

For a document to be considered for admission there must be sufficient evidence to support a finding that the document is what its proponent claims it to be. *See* Fed.R.Evid. 901(a). Generally, authentication requires competent testimony concerning the document at issue. *See* Fed.R.Evid. 901(b)(1). The authentication requirement is rarely onerous; in many instances, a single sentence will suffice, indicating that the document is what it appears to be. *See Gougen v. Textron, Inc.,* 2006 WL 581022 at *2; *see also U.S. v. Echeverri*, 982 F.2d 675, 679 (1st Cir. 1993) ("The Federal Rules of Evidence adopt a flexible approach to this question."). "If there is 'evidence sufficient to support a finding' that the evidence is what the proponent claims it to be, the preliminary threshold of authentication has been satisfied and the jury should then be permitted to consider its weight or credibility." *Kissinger,* 836 F.2d at 683 (citing 5 J. Weinstein & M. Berger, *Weinstein's Evidence,* ¶ 901(a)( [01] ) at 901-15 to -16 (1983)).

A foundation for admission of a business record must be laid by testimony of the custodian of the record or by some other qualified witness who is familiar with the manner in which the record was prepared. A qualified witness is simply one who can explain and be cross-examined concerning the manner in which the records are made and kept. *See Wallace Motor Sales, Inc. v. American Motors Sales Corp.,* 780 F.2d 1049, 1061 (1st Cir. 1985) (citing *NLRB v. First Termite Control Co., Inc.,* 646 F.2d 424, 427 (9th Cir.1981)). The foundation for the admissibility of a business record does not need

to be established through the testimony of the preparer nor by the transmitter of the record.  *See United States v. Moore,* 923 F.2d 910, 915 (1st Cir. 1991).

Here, Rapoza, Yale's Customer Service Manager, authenticated the memo during his deposition by identifying it as the document prepared by Frazer and himself.  (*See* Rapoza Dep. at 32).  As a co-author of the memo, Rapoza certainly falls within the definition of a "qualified witness" who is familiar with the manner in which the memo was created.

### 2. The memo qualifies as a business record under the Federal Rules of Evidence.

Rule 803(6) of the Federal Rules of Evidence encapsulates what is commonly referred to as the "business record exception" to the hearsay rule.[1]  A qualified witness testifying about a business record need only be able to demonstrate that:

    (1)    the document is a record that either was made by a person with knowledge of the underlying facts or was made from information transmitted by such a person to another;

    (2)    the document was made at or near the time of the event or transaction it records;

    (3)    the record was made as part of the regular practice of the business; and

---

[1]  The full text of Rule 803(6) is as follows:
*Records of regularly conducted activity*.  A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record or data compilation, all as shown by the testimony of the custodian or other qualified witness, or by certification that complies with Rule 902(11), Rule 902(12), or a statute permitting certification, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

5

>    (4)    the record was kept in the course of a regularly conducted business activity.

*See* Fed.R.Evid. 803(6). As stated above, in support of the memo's admissibility as a business record, Defendant attached relevant pages of Rapoza's deposition testimony.

Frazer's affidavit, a certified document appended hereto under Fed.R.Evid. 902 (11), provides even further support for the admission of the memo as a business record.[2] (Frazer Aff. at ¶¶ 3-4). Specifically, the memo was prepared and kept in the course of a "regularly conducted business activity," and it is Yale's practice to compile such paperwork in certain instances where violations of company policy by employees leads to serious disciplinary action. (Frazer Aff. at ¶ 4). Further, the memo was made on August 9 and August 10, 2004, which is "at or near the time" of the underlying facts it describes, namely, Plaintiff's violation of Yale's attendance policy and termination, and it was created by "a person with knowledge" of the events described therein – in this case, it was written by two people with knowledge, Rapoza and Frazer. (Frazer Aff. at ¶ 3; *see also* Rapoza Dep. at 32-33). The memo is thus admissible as a business record and may be considered as evidence by the court.

Additionally, the First Circuit has stated that "non-routine" records made in the course of a regularly conducted business should be admissible under Rule 803(6) so long

---

[2] Rule 902 (11) of the Federal Rules of Evidence defines "certified domestic records of regularly conducted activity" as:
> [t]he original or a duplicate of a domestic record of regularly conducted activity that would be admissible under Rule 803(6) if accompanied by a written declaration of its custodian or other qualified person, in a manner complying with any Act of Congress or rule prescribed by the Supreme Court pursuant to statutory authority, certifying that the record:
> (A) was made at or near the time of the occurrence of the matters set forth by, or from information transmitted by, a person with knowledge of those matters;
> (B) was kept in the course of the regularly conducted activity; and
> (C) was made by the regularly conducted activity as a regular practice.

6

as (i) they meet the other requirements of the rule, and (ii) the attendant circumstances do not indicate a lack of trustworthiness. *See Kassel v. Gannett Co., Inc.,* 875 F.2d 935, 945 (1st Cir. 1989); *Willco Kuwait (Trading) S.A.K. v. deSavary,* 843 F.2d 618, 628 (1st Cir. 1988). The memo satisfies the other elements of the business record exception set forth in Rule 803(6). Thus, Yale's creation of file memoranda documenting employee policy violations is a sufficiently regular practice; as such, it retains the "presumption of reliability" accorded to workday business activities which lies "at the heart of the [hearsay] exception." *See id.* (quoting *Hiram Ricker & Sons v. Students Int'l. Mediation Soc.*, 501 F.2d 550, 554 (1st Cir. 1974)); *see* Frazer Aff. at ¶ 4. Moreover, the memo contains adequate indicia of trustworthiness: Rapoza, as a Customer Service Manager, was well qualified to attest to the authenticity of the memo and its use as a business record. In support of this, two courts in other circuits have reasoned that documents produced by an employer from an employee's personnel file are sufficiently authenticated because they "are business records maintained by the" employer and are verifiable and of known origin." *See Johnson v. Medical Ctr. Of Louisiana*, 2002 WL 31886829 (E.D.La. Dec. 26, 2002); *Corral v. Chicago Faucet Co.*, 2000 WL 628981 (N.D.Ill. Mar. 9, 2000).

  Plaintiff attempts to argue that the memo is inadmissible because there is an indication that it was written after Mr. Frazer consulted with Yale's attorney and after it had made the decision to fire Plaintiff, but fails to cite any caselaw in support of this far-reaching proposition. Defendant is unaware of any authority suggesting that the memo cannot constitute a business record because one of its authors spoke to his attorney before it was created. Any conversations between Frazer or Rapoza and their counsel have no

7

bearing on the memo's admissibility under the business record exception to the hearsay rule, since the memo satisfies the foundational requirements and the elements under Fed.R.Evid. 803(6) necessary to establish a business record. For these reasons, Exhibit 15 is admissible under Fed.R.Evid. 803(6) as a business record of Yale.

### 3. There are no multiple hearsay problems presented by the memo.

Since Exhibit 15 is admissible as a business record, the only remaining question concerns the admissibility of the writings contained in the memo itself. Plaintiff argues that Exhibit 15 contains "levels of inadmissible hearsay, to wit, the statements of James Rapoza, which are asserted my [sic] Mr. Frazer, the author of the memorandum, and not under oath by Mr. Rapoza." By making this assertion, Plaintiff ignores Rapoza's deposition testimony, procured by Plaintiff's counsel, in which Rapoza admitted under oath that he was an equal participant in creating the memo with Frazer and testified about the circumstances of its composition. (Rapoza Dep. at 32) ("*Q.* Did you, in any way, participate in putting this document together? *A.* Yes….Myself and Lewis Frazer sat in his office and went over the sequence of events…of that period and put as much detail down on paper as we could."). Therefore, there is no multiple hearsay problem with those statements in the memo attributed to Rapoza or Frazer because both co-authored the memo. As such, the memo and its contents are admissible.[3]

---

[3] In the memo, Frazer and Rapoza also reference out-of-court statements made by Plaintiff. Plaintiff's statements to Rapoza and Frazer are admissible, however, because they are being offered against Plaintiff as admissions by a party-opponent under Rule 801(d)(2)(A) of the Federal Rules of Evidence. Admissions of party-opponents are treated as "non-hearsay" under the Federal Rules of Evidence. *See* Fed.R.Evid. 801(d)(2). Since admissions by a party-opponent, like Plaintiff, are not hearsay, they need not even possess the circumstantial guarantees of trustworthiness normally required of admitted hearsay. McCormick on Evidence § 254, at 141 (John W. Strong ed., 4th ed.1992). Therefore, there are no multiple hearsay problems, and the memo, including the admissions of Plaintiff contained within it, are properly admissible before the court.

8

**B.      Exhibit 15 Is Also Admissible Under The Present Sense Impression Exception To The Hearsay Rule.**

On an alternative ground, the memo is admissible pursuant to the present sense impression to the hearsay rule. *See* Fed.R.Evid. 803(2). Under this exception, a statement that is otherwise excludable as hearsay may be admissible if it describes or explains an event or condition and if it was made while the declarant was perceiving the event or condition, or immediately thereafter. *See id.; see also Makuc v. American Honda Motor Co., Inc.,* 835 F.2d 389, 391-92 (1st Cir. 1987).

A party seeking to invoke the present sense impression in a specific case must first satisfy three requirements. *U.S. v. Ferber*, 966 F. Supp. 90, 97 (D.Mass. 1997). First, the declaration must be limited to describing or explaining the event in question. *Id.* (citing *U.S. v. Portsmouth Paving Corp.*, 694 F.2d 312, 323 (4th Cir. 1982)). Second, the statement must be made contemporaneously or immediately after the event described. *Ferber*, 966 F. Supp. at 97 (citing McCormick on Evidence, § 27, at 214 (John W. Strong ed., 4th ed. 1992)). Finally, the declarant must have been describing something that he actually perceived himself, though his participation in the event is not required. *Ferber*, 966 F. Supp. at 97 (citing Fed.R.Evid. 803 advisory committee's notes). Here, the memo satisfies all three requirements.

Specifically, the memo represents a present sense impression of Frazer and Rapoza recorded close to the time of the events described within it. The memo describes Plaintiff's attendance violations and separation from Yale. At his deposition, Rapoza testified that he and Frazer wrote the memo on August 9 and August 10, 2004, immediately after Plaintiff's termination on August 9, 2004. (*See* Rapoza Dep. at 32-33.). As in the *Ferber* case, the level of detail in the memo supports an inference that

Frazer and Rapoza created the memo with "virtual immediacy" and that they had no conceivable reason to falsify it at that time. *See* 966 F. Supp. at 97. Further, the memo discusses Plaintiff's attendance violations which were actually perceived by both Rapoza and Frazer. As such, the memo was created during or immediately after Rapoza and Frazer perceived the events described therein - namely, their communications and interactions with Plaintiff relating to Plaintiff's attendance violations - and is properly admissible under the present sense impression exception to the hearsay rule.

## IV.    CONCLUSION

For all the foregoing reasons, Plaintiff's Motion to Strike Exhibit 15 to the Defendant's Statement of Material Facts is lacking in substance and should be DENIED. Accordingly, for the reasons presented in Defendants' original Motion for Summary Judgment and accompanying exhibits, the Court should conclude that no genuine issues of material fact exist on any of the claims set forth in Plaintiff's Complaint, and grant summary judgment in Defendant's favor.

                                    YALE APPLIANCE
                                    AND LIGHTING, INC.
                                    By its attorneys,


                                    /s/ Tracy Thomas Boland
                                    Jaclyn Kugell (BBO# 561622)
                                    Tracy Thomas Boland (BBO# 638878)
                                    MORGAN, BROWN & JOY, LLP
                                    200 State Street
                                    Boston, MA 02109
                                    (617) 523-6666

Dated: March 8, 2007

## **CERTIFICATE OF SERVICE**

      I, Tracy Thomas Boland, hereby certify that I have caused a copy of the foregoing to be served upon Plaintiff's attorney, Daniel W. Rice, Glynn, Landry, Harrington & Rice, LLP, 10 Forbes Road, Braintree, MA 02184, by ECF on this 8th day of March 2007.

                                      /s/ Tracy Thomas Boland
                                      Tracy Thomas Boland

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DANIEL GREENWOOD, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>YALE APPLIANCE AND LIGHTING, INC., )<br>)<br>Defendant. )<br>) | Civil Action No. 05-10605 JLT |

## AFFIDAVIT OF JAMES RAPOZA SUBMITTED IN SUPPORT OF DEFENDANT YALE APPLIANCE AND LIGHTING, INC.'S OPPOSITION TO PLAINTIFF'S MOTION TO STRIKE DEFENDANT'S EXHIBIT 15

I, James Rapoza, hereby state under the pains and penalties of perjury:

1. I am employed at Yale Appliance and Lighting, Inc. ("Yale") as its Customer Service Manager. I have personal knowledge of the facts set forth in this affidavit, which I am submitting in support of Yale's Opposition to Plaintiff's Motion to Strike Defendant's Exhibit 15.

2. On Tuesday, July 27, 2004, Plaintiff informed me that he would not be in the next day because he was going to the doctor's due to stomach pain.

3. On Monday, August 2, 2004, Plaintiff did not call me as he said he would. As a result, I called Plaintiff and Plaintiff told me that his doctor's appointment had been rescheduled for the next day, Tuesday, August 3rd. I asked Plaintiff for medical documentation to verify his absences and to find out whether he could work on a light duty basis.

4. On Tuesday, August 3rd, in the afternoon, Plaintiff arrived at Yale and asked me whether he could use his vacation time as paid time off for the week since he already had

exhausted all of his paid time off days and he expected to be out all week. I told Plaintiff he would have to discuss it with Lewis Frazer, Yale's Director of Operations.

5. On Tuesday, August 3rd, Plaintiff did not provide me with any documentation excusing him from work for the days he already had missed or for his ability to work that week, despite my request for that documentation.

6. Later that day, I called Plaintiff to inform him he would not be permitted to use his vacation time as paid time off for that week. I again asked Plaintiff to obtain medical documentation to verify his absences that week and any restrictions on his ability to work and again asked Plaintiff whether he could return to work on a light duty basis.

7. Despite the fact Plaintiff told me he would be back in touch with me on Wednesday, Plaintiff did not do so. On Wednesday, August 4th, Plaintiff failed to call in an hour before the start of his shift. Plaintiff still had not provided me with documentation to support this absence or the absences for any of the previous days.

8. On Friday, August 6th, Plaintiff did not call me about whether he would be in that day. Rather, in the afternoon, Plaintiff appeared at Yale to inquire about his paychecks.

9. To the extent I was involved in any of the events recounted in the memo at Exhibit 15, the memo is a truthful and accurate depiction of those events.

Signed under the pains and penalties of perjury this 8th day of March, 2007.

_____
James Rapoza

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|                                          |   |                              |
|------------------------------------------|---|------------------------------|
| DANIEL GREENWOOD,                        | ) |                              |
|                            Plaintiff,    | ) |                              |
|                                          | ) | Civil Action No. 05-10605 JLT |
| v.                                       | ) |                              |
|                                          | ) |                              |
| YALE APPLIANCE AND LIGHTING, INC.,       | ) |                              |
|                            Defendant.    | ) |                              |

**AFFIDAVIT OF LEWIS FRAZER SUBMITTED IN SUPPORT OF DEFENDANT YALE APPLIANCE AND LIGHTING, INC.'S OPPOSITION TO PLAINTIFF'S MOTION TO STRIKE DEFENDANT'S EXHIBIT 15**

I, Lewis Frazer, hereby state under the pains and penalties of perjury:

1. I am the Director of Operations of Yale Appliance and Lighting, Inc. ("Yale"). I have personal knowledge of the facts set forth in this affidavit, which I am submitting in support of Yale's Opposition to Plaintiff's Motion to Strike Defendant's Exhibit 15.

2. Attached hereto as Exhibit A is a true and correct copy of a memorandum to Plaintiff Daniel Greenwood's ("Plaintiff's") employee file, which is also attached as Exhibit 15 to Yale's Local Rule 56.1 Statement of Material Facts in Support of its Motion for Summary Judgment.

3. The memo was made at or near the time of the occurrence of the matters set forth by, or from information transmitted by, a person with knowledge of those matters. The memorandum is dated August 10, 2004 and was co-authored by James

Rapoza and me. We wrote the memo together to document the sequence of events leading up to Plaintiff's violation of Yale's attendance policy.

4. The memo was prepared and kept in the course of a regularly conducted business activity, and it is Yale's practice to compile and keep such paperwork in certain instances where violations of company policy by employees leads to serious disciplinary action.

5. To the extent I was involved in any of the events recounted in the memo at Exhibit 15, the memo is a truthful and accurate depiction of those events.

6. On Thursday, August 5th, Plaintiff did not come to work and again failed to call in an hour before his shift. I left Plaintiff a message on his home answering machine regarding his lack of contact and the need for documentation regarding his absences.

7. On Friday, August 6th, Plaintiff did not call me about whether he would be in that day. Rather, in the afternoon, Plaintiff appeared at Yale to inquire about his paychecks. At this time, Plaintiff provided me with his hospital discharge form. This was the first documentation Plaintiff provided since his hospitalization over one week prior on July 28th and it provided "0 restrictions on activity." As a result, this document did not explain why Plaintiff could not work during that week, the week of August 2nd; to the contrary, it specifically indicated there were no restrictions on Plaintiff's activity after his discharge from the hospital.

8. During this meeting on Friday, August 6, 2004, I explained to Plaintiff the potential violations of company policy relating to unexcused absences and verification of sick leave. Plaintiff indicated he would endeavor to get the proper documentation. I

2

agreed to give Plaintiff yet another opportunity to provide documentation to establish the need for his absences.

Signed under the pains and penalties of perjury this 6th day of March, 2007.

_____
Lewis Frazer

# EXHIBIT A

**MEMO**

Date:   Tuesday, August 10th, 2004

From:  Lewis Frazer

TO:    Employee File, Daniel Greenwood

RE:    Violation of Yale Policy

On Tuesday evening ~~August~~ July 27th, 2004, delivery driver Daniel Greenwood called his direct supervisors, James Rapoza and James Oneill, to inform him that he was going to the doctors due to stomach pains and would not be at work the following day.

James Rapoza received a message from Mr. Greenwood indicating that he was admitted to the hospital. Mr. Rapoza called him back and Mr. Greenwood informed Mr. Rapoza that he was admitted to the hospital with an intestinal infection and his doctor wanted him to stay in the hospital through the weekend. During the conversation, Mr. Greenwood indicated that he was planning on signing himself out of the hospital on Friday due to a scheduled court date and a weekend long party at his home.

On Friday, Mr. Rapoza spoke with Mr. Greenwood who informed him that he had signed himself out that day and that his doctor wanted to see him on Monday. Mr. Greenwood was scheduled to work on that Monday, August 2nd, 2004. Mr. Rapoza and Mr. Greenwood agreed to speak on Monday after Mr. Greenwood's appointment with his doctor. Mr. Rapoza offered Mr. Greenwood light duty as we were short handed in the warehouse.

On Monday, Mr.Rapoza did not hear from Mr. Greenwood. Mr. Rapoza called Mr. Greenwood Monday afternoon. At that time, Mr. Greenwood informed us that his doctor's appointment was cancelled and was rescheduled for Tuesday. At that point, an agreement was made between Mr. Greenwood and Mr. Rapoza that Mr. Greenwood would come to the office after his doctor's appointment.

On Tuesday afternoon, around 1:00pm, having not heard from Mr. Greenwood, Mr. Rapoza called the house and was informed by Mr. Greenwood's wife that he was sleeping. She also indicated that his doctor's appointment was scheduled for the afternoon. Mr. Greenwood appeared at the office around 3:00pm and verbally informed Mr. Rapoza that his doctor required him to be absent from work until his next appointment, which was scheduled for the following Monday. Mr. Greenwood provided no documentation from his doctor to explain his absence or current physical condition despite our request.

During this conversation, Mr. Greenwood inquired if he could use vacation time as PTO since he had already exhausted all of this PTO days. Mr. Rapoza informed Mr.

DEF 0152

Greenwood that he would have to check with Lewis Frazer, Director of Operations, regarding this issue since it was against company practice.

After conferring with Mr. Frazer regarding the use of vacation time, Mr. Rapoza called Mr. Greenwood at home and informed him that he would not be able to use vacation time as PTO time and would therefore not be paid. During this conversation, Mr. Rapoza again requested documentation from Mr. Greenwood's doctor regarding his health issues and current condition to see if he was capable of performing limited duties. Mr. Rapoza made the offer to have Mr. Greenwood work inside the warehouse or office on limited duty. At that time, Mr. Greenwood agreed to check with his doctor and provide us with documentation from his doctor on Wednesday.

On Wednesday, Mr. Greenwood did not contact Mr. Rapoza as agreed. On Thursday, Mr. Rapoza approached Mr. Frazer regarding the lack of contact. On Thursday afternoon, Mr. Frazer called Mr. Greenwood and left a message on his answering machine. Mr. Frazer also inquired if other employees had heard from Mr. Greenwood. No one had heard from Mr. Greenwood at that point.

On Friday morning, Mr. Greenwood called the office to inquire about his paychecks and spoke with Mr. Frazer. Mr. Frazer requested that Mr. Greenwood stop by the office and bring documents from his doctor to explain his absence and current physical condition. Mr. Greenwood appeared at the office and provided Mr. Frazer with his hospital release from the previous Friday. This was the only documentation Mr. Greenwood provided.

The release statement indicated "No restrictions on activities". When Mr. Frazer questioned Mr. Greenwood on the fact that this release did not prescribe restrictions on his activities, he stated that he did not read the release. Mr. Frazer advised Mr. Greenwood of the potential violation of Yale Policies regarding verification of sick leave and unexcused absences of three or more days. Mr. Greenwood agreed with Mr. Frazer that he would see his doctor and provide Yale with the proper documentation.

On Monday morning, Mr. Greenwood arrived at the office and provided Mr. Frazer with a note that did not explain his absence or his current physical condition regarding work. Mr. Frazer asked Mr. Greenwood if he had any other documentation to support his absence and Mr. Greenwood replied "I should be all set..". At that point, Mr. Frazer advised Mr. Greenwood that he not provided sufficient documentation regarding his absence and was in violation of Yale's policy regarding unexcused absences of three or more days. Mr. Frazer indicated that he would speak with Yale's employment attorney and advise Mr. Greenwood of any change in his status. Upon speaking with council, Mr. Frazer informed Mr. Greenwood via regular mail and certified mail, return receipt requested, that he had violated Yale's policy of unexcused absences of three or more days and was considered to have voluntarily resigned.

DEF 0153