UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
)
DANIEL GREENWOOD,                   )
                                    )
                Plaintiff,        )
                                    ) Civil Action No. 05-10605 JLT
v.                                  )
                                    )
YALE APPLIANCE AND LIGHTING, INC.,  )
                                    )
                Defendant.        )
_____ )

**DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION
TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (LEAVE TO FILE
GRANTED PER COURT ORDER DATED FEBRUARY 28, 2007)**

Defendant Yale Appliance and Lighting, Inc. ("Defendant" or "Yale") hereby submits the following Reply to Plaintiff's Opposition to Defendant's Motion for Summary Judgment ("Opposition")[1].

**I.   INTRODUCTION**

Despite Plaintiff's efforts to divert the Court's attention to immaterial facts and legal arguments, nothing in the Opposition creates a genuine dispute of material fact sufficient to survive summary judgment. Once these immaterial facts and unsupported legal theories are pushed aside, the record before the Court fully supports summary judgment on all counts of the Complaint and dismissal of all of Plaintiff's claims as a matter of law is warranted.[2]

---

[1] Plaintiff's 56.1 Response to Defendant's Statement of Undisputed Material Facts includes a section entitled "Plaintiff's Statement of Additional Material Facts." The Rules of Civil Procedure, and the Local Federal Rules, do not seem to provide for any such responsive "fact" section put forward by the non-moving party, nor does it appear any response is required to the same. Nonetheless, to the extent Defendant has any obligation to respond to the additional "Facts" put forward by Plaintiff, and to the extent any of the "Facts" included therein are material and not the subject of its Motion to Strike, Defendant accepts the same as true for purposes of this motion only. (Non-material facts are not admitted for purposes of the motion; to the extent any documents are referenced or quoted therein, Defendant states that the documents speak for themselves.)

[2] The instant brief concentrates on only those arguments not previously addressed by Defendant. With regard to the remainder of arguments Plaintiff raised in his Opposition, Defendant relies on the

II.    ARGUMENT

    A. **The Undisputed Record Evidence Reveals No Violation Of The FMLA Because Plaintiff Exhausted His Twelve Weeks.**

Plaintiff contends he had not exhausted his twelve weeks of FMLA-protected leave before his August 2004 absence. Specifically, Plaintiff argues that the time spent in his light duty position from January 22, 2004 through February 13, 2004 should not be considered as part of those twelve weeks. (Opposition at 4-5). ***Plaintiff provides no authority for that proposition***. (Opposition at 4-5). Instead, Plaintiff simply contends it should be "self-evident" that his "light duty . . . is not 'leave.'" (Opposition at 4). In so doing, Plaintiff blatantly disregards the plain language of a Department of Labor regulation, and case law interpreting the regulation, both of which specifically provide for the inclusion of the light duty period in the twelve week calculation.

First, Plaintiff contends 825 CFR 825.220(d) does not provide that light duty work is to be considered part of the twelve week calculation under the FMLA. The regulation plainly *does* state that time spent on light duty is to be included in the twelve week calculation.[3] Moreover, the case law Defendant has cited expressly holds that light duty work is to be counted towards the exhaustion of the twelve weeks allotted under the FMLA. Specifically, in *Wright v. Owens-Illinois, Inc. et al.*, the Court held "a Labor

---

relevant arguments in its Memorandum in Support of Motion for Summary Judgment ("Defendant's Memorandum").

[3]    Employees cannot waive, nor may employers induce employees to waive, their rights under the FMLA. For example, employees (or their collective bargaining representatives) cannot "trade off" the right to take FMLA leave against some other benefit offered by the employer. This does not prevent an employee's voluntary and uncoerced acceptance (not as a condition of employment) of a "light duty" assignment while recovering from a serious health condition (*see* §825.702(d)). In such a circumstance the employee's right to restoration to the same or an equivalent position is available until 12 weeks have passed within the 12-month period, ***including all FMLA leave taken and the period of "light duty."***

825 CMR § 825.220(d) (emphasis added).

Department Regulation indicates that *an uncoerced period of 'light duty' counts as FMLA leave.*" No. 2:02-CV-223, 2004 WL 1087359, *9 (S.D.Ind. May 14, 2004) (emphasis added) (referencing 825 CMR § 825.220(d)).[4] *See also Artis v. Palos Community Hospital,* No. 02-C-8855, 2004 WL 2125414, *6 (N.D.Ill. Sept. 22, 2004).[5] Despite Plaintiff's characterization of the *Wright* and *Artis* decisions as "obscure District Court cases," they are indeed holdings of the United States Federal Court for the Southern District of Indiana and Northern District of Illinois, respectively, and are the only courts to have interpreted 805 CMR § 825.220(d).[6] Plaintiff's failure to include any authority to the contrary underscores the weakness of his argument.

As explained fully in Defendant's Memorandum, a calculation of the FMLA-protected leave Plaintiff enjoyed in the twelve months prior to his July-August 2004 absence, appropriately including light duty time, reveals Plaintiff exhausted the allotted twelve weeks as of February 13, 2004. Therefore, Plaintiff's July-August 2004 absence was not protected by the FMLA and any claim Defendant violated the FMLA by terminating Plaintiff for his absences on August 4, 5, and 6 fails as a matter of law.

---

[4]    Plaintiff's testimony demonstrates that his light duty assignment in January-February, 2004 was voluntary and uncoerced. (Greenwood Dep., Ex. 1 to Defendant's Statement of Facts, at 201-02).

[5]    In *Artis*, the Court found the regulations interpreting the FMLA:

> do contemplate situations where, as in this case, an employee is not ready to return to her regular job, but can perform light duty work. 29 C.F.R. 825.220(d). Under such circumstances, the FMLA is satisfied so long as acceptance of light duty work is 'voluntary and uncoerced,' and the employee's regular job is held open for twelve weeks, regardless of whether she spends those twelve weeks on light duty, unpaid leave, or some combination.

2004 WL 2125414 at *6.

[6]    Defendant's research on this issue revealed only the *Artis* and *Wright* decisions.

3

B.  **The Undisputed Record Evidence Reveals No Violation Of The FMLA Because There Is No Evidence Plaintiff Was Incapacitated On The Days For Which He Was Terminated.**

Even if Plaintiff could somehow establish he had not exhausted his FMLA-protected twelve weeks by Summer 2004, the record evidence demonstrates that Plaintiff was not incapacitated on the days for which he was terminated, and thus, under no circumstances would the absences be for a "serious health condition" protected by the FMLA.  Although Plaintiff would have the Court believe that he "was fired for missing work between July 29 and August 9, 2004," this representation misconstrues the undisputed record evidence.  (Opposition at 10).  The undisputed record demonstrates that Defendant terminated Plaintiff's employment for his absences on August 4, 5, and 6, 2004 (not for the period of July 29, 2004 through August 9, 2004, as represented by Plaintiff without support therefore).  (*See* memo to Plaintiff regarding termination at Ex. 22 to Defendant's Statement of Facts).  The decision to do so was made only after Plaintiff failed repeatedly to provide Defendant with medical verification that he was actually incapacitated from performing any work (including light duty), during the week of August 2, and specifically from August 4-6, 2004.  Indeed, the only medical documentation Plaintiff ever provided stated that he: 1) had no restrictions on activity during this period; and 2) that he could work on August 9, 2004, but failed to address his ability to work during the prior week.  (*See* Section 111(B)(2) of Defendant's Memorandum).

C.  **The Undisputed Record Evidence Reveals No Violation Of The FMLA Because Plaintiff Failed To Provide Documentation Of The Reason For His Extended Absence.**

Again assuming Plaintiff can clear his initial hurdle of establishing the FMLA applied to the July-August 2004 absence, which Defendant adamantly contends he

4

cannot, Plaintiff next attacks Defendant's request for documentation from Plaintiff justifying the need for his absences during the week of August 2, 2004.  (Opposition at 6-9).  Plaintiff's argument misses the mark.

In support of this argument, Plaintiff relies on the federal regulations governing the formal written medical certification, which employers may request pursuant to the FMLA.  A formal FMLA medical certification, whether in the form of the DOL-issued certification or a comparable document, carries with it certain obligations on the part of the employer and employee.  *See* 29 CFR §§ 825.305-306.  Of course, employers are not obligated to use the DOL form, or a comparable "medical certification" form, or even to request the amount and nature of information contemplated by such a form.  *See* 29 CFR § 825.305 ("An employer *may* require [a medical certification] . . . .") (emphasis added); 29 CFR § 825.306 (stating the DOL or another form containing the same information is optional).  Plaintiff cites to no, and there is no, record evidence that Defendant ever requested a formal medical certification or the extensive information sought by such a form from Plaintiff.  *See* 29 CFR § 825.306.

Rather, in the present case, Defendant merely sought some very basic information from Plaintiff; information consistent with that which it seeks, pursuant to Defendant's policy, when an employee is absent, allegedly due to illness, for multiple days, whether the absence is FMLA-protected or not. (*See e.g.,* Handbook, Ex. 7 to Defendant's Statement of Facts, at 13). Specifically, Defendant simply wanted documentation to verify Plaintiff's absence, and whether he could perform light duty work.  All of these details aside, the bottom line is Plaintiff knew what he had to do.  Plaintiff was familiar with this procedure as Yale asked him for the same information, and he complied, during

his absence from November 2003 through his light duty return in January 2004. (*See* Frazer Dep., Ex. 11 to Defendant's Statement of Facts, at 17-20, 42-43, 52-53). Plaintiff's attempt to suggest that Plaintiff did not understand what was required of him, and/or place liability on Defendant for failure to provide him with written notice of his obligations is disingenuous at best.

Finally, Plaintiff would have the Court believe Defendant rejected outright, and without reason, the documentation Plaintiff did ultimately provide. (Opposition at 9). As explained more fully in Defendant's Memorandum, Defendant told Plaintiff that documentation was insufficient because it was. As previously indicated, the documentation Plaintiff provided on August 6, 2004 stated that he had had no restrictions on his physical activities whatsoever since July 30, 2004; the documentation he submitted thereafter did not indicate he was unable to work during the week of August 2; instead, it merely indicated he could work on August 9, 2004. Plaintiff's continued failure to provide information verifying his inability to work, despite repeated opportunities, ultimately led to his termination. There is simply no record evidence to the contrary.[7]

### D. **Judgment As A Matter of Law Is Warranted On Plaintiff's Workers' Compensation and Age Discrimination Claims.**

#### 1. **"Mixed Motive" Analysis Is Not Available for Plaintiff's Workers' Compensation Retaliation Claim.**

In an attempt to save his workers' compensation retaliation claim, Plaintiff joins the discussion of the claim with his age discrimination claim, and attempts to apply a

---

[7] Section III(C) of Defendant's Memorandum fully details the reasons that Plaintiff is unable to maintain a claim of FMLA retaliation as a matter of law, and as such, Defendant need not reargue the same herein. Notably, Plaintiff's Opposition does not offer arguments in support of this claim for FMLA retaliation; rather, the arguments made merely offer further support for Plaintiff's contention that Defendant violated the FMLA by terminating him for his absences in August, 2004. (Opposition at 10-13). Such arguments are fully addressed and successfully countered in Defendant's Memorandum and herein.

6

"mixed motive" analysis to it.  Plaintiff provides no authority supporting application of the mixed-motive analysis to a claim of workers' compensation retaliation.  The limited binding precedent on workers' compensation retaliation claims reveals the only appropriate legal analysis of such a claim is a burden-shifting analysis.  *See Benoit v. Technical Manufacturing Corp.*, 331 F.3d 166, 177 n.5 (1st Cir. 2003).  As is fully outlined in the Memorandum in Support of Defendant's Motion for Summary Judgment, Plaintiff's claim for workers' compensation retaliation fails as a matter of law.[8]  (*See* section III(E) of Defendant's Memorandum).

### 2. **Plaintiff Cannot Reach A Mixed-Motive Analysis Of His Age Discrimination Claim Via Direct Evidence Because There Is No Direct Evidence.**

Plaintiff intends to reach a mixed-motive analysis of his age discrimination claim based on "direct evidence."  (Opposition at 14-15).  Plaintiff fails to satisfy the high burden placed on him to do so.[9]

To constitute "direct evidence," evidence in the form of statements must be made by a decision maker "that *directly reflect the alleged animus and bear squarely on the contested employment decision*."  *Febres v. Challenger Caribbean Corp.*, 214 F.3d 57, 60 (1st Cir. 2000) (emphasis added).  "Isolated or ambiguous remarks tending to suggest animus

---

[8]   Even if the analysis was applied to the workers' compensation retaliation claim, as analyzed herein with respect to Plaintiff's age discrimination claim, the claim fails under a "mixed motive" analysis.

[9]   Plaintiff asserts age discrimination in violation of the ADEA and Chapter 151B.  Under federal law, Plaintiff may reach the mixed-motive analysis via direct or circumstantial evidence.  *See Desert Palace, Inc. v. Costa*, 539 U.S. 90, 101-02, 123 S. Ct. 2148, 2155 (2003).  There is insufficient circumstantial evidence to allow Plaintiff to reach this analysis as he cannot make out even a *prima facie* case of discrimination.  (*See* section III(D) of Defendant's Memorandum in Support of Motion for Summary Judgment).  Under Massachusetts state law, the courts hold that "[a] plaintiff's initial burden in a mixed-motive case may only be met by direct, or strong, evidence that discrimination played a motivating role in the employment decision."  *Connolly v. Suffolk County Sheriff's Dep't et al.*, 62 Mass. App. Ct. 187, 194 (2004).  In any event, as discussed herein, whether analyzed under the burden-shifting framework, or the "mixed motive" analysis, judgment as a matter of law should enter on Plaintiff's age discrimination claim.

based on age are insufficient, standing alone, to prove evidence of an employer's discriminatory intent." *Speen v. Crown Clothing Corp.*, 102 F.3d 625, 636 (1st Cir. 1996), *cert. denied* 520 U.S. 1276 (1997). A comment "that plausibly can be interpreted two different ways – one discriminatory and the other benign – does not directly reflect illegal animus and, thus, does not constitute direct evidence." *Fernandes v. Costa Bros. Masonry, Inc.,* 199 F.3d 572, 583 (1st Cir. 1999). Simply put, even a remark, "suggest[ing] age-based animus, would be insufficient, standing alone, to prove an employer's discriminatory intent." *Tucker v. Manheim Auto Action*, 194 F. Supp. 2d 56, 60 (D.P.R. 2002) (dismissing age claim based on supervisor's comment to plaintiff of "Ralph, you're sixty years old. Why would you want to go out and work 12 to 16 hours calling on dealers at your age, start all over again? We would like to maybe set up golf tournament [sic], be an assistant, when my boss come [sic] to town . . .")

Here, the remark on which Plaintiff relies to support his age claim simply does not rise to the level of "direct evidence" because it does not "directly reflect age animus" and "bear squarely on the employment decision." *Febres*, 214 F.3d at 60. By way of reminder, the alleged comment was as follows:

> And, you know, he told me, `Well, you seem to be getting hurt a lot,' and this and that. `Maybe you're too old for that. You know, maybe you're too old to keep doing what you're doing.' I told him, you know, I mean I got hurt, you know, the previous year, you know what I mean, doing their work and doing the best I could. You know, I have that hernia injury, you know, and he was just -- `Well, you're getting hurt. You're getting hurt too much. How old are you,' and this and that.[10]

(Facts at ¶ 60). Even assuming for the sake of argument that Mr. Frazer made this remark, it is ambiguous, does not directly reflect age animus on the part of Mr. Frazer, or

---

[10] To the extent Plaintiff's "Facts" contain variations on this comment as supported by the affidavit Plaintiff submitted with his Opposition, those variations are partially the subject of Defendant's Motion To Strike, which is being filed herewith. A plaintiff cannot create a disputed issue of fact by submitting an affidavit that contradicts her earlier sworn testimony. *See Colantuoni v. Alfred Calcagni & Sons, Inc.*, 44 F.3d 1, 4-5 (1st Cir. 1994).

expressly bear on, or refer to, Defendant's ultimate decision to terminate Plaintiff. *See Wynn & Wynn v. Mass. Comm'n Against Discrimination*, 431 Mass. 655, 667 (2000) ("Statements made by decision makers unrelated to the decisional process itself do not suffice to satisfy the plaintiff's threshold in these cases.") Plaintiff alleges Mr. Frazer made this comment during the same conversation wherein Mr. Frazer agreed to give Plaintiff yet another opportunity to provide documentation that indicated the need for Plaintiff's absence, the length of the absence, and whether he could work in a light duty capacity. This fact is undisputed. (Facts at ¶ 60). It is simply illogical to suggest Mr. Lewis made statements with alleged age bias while, in the same breath, he told Plaintiff he could take yet more time to produce what Yale had been asking of him for the past week. Why not fire him on the spot? Because the decision was not motivated by age animus; it was motivated by Plaintiff's ultimate refusal to comply with Defendant's request for information and documentation.[11] Such evidence is not "direct evidence." *Fernandes*, 199 F.3d at 583.

In any event, to trigger a mixed motive analysis "a plaintiff must show, at a minimum, 'that there was differential treatment in an employment action and that the adverse employment decision was caused at least in part by a forbidden bias.'" *See Rossiter v. Potter,* 2005 WL 1288063 (D.Mass. 2005), *citing Hillstrom v. Best Western TLC Hotel*, 354 F.3d 27, 31 (1st Cir. 2003). Particularly on this record, with evidence that younger employees

---

[11] On several occasions Plaintiff seems to suggest that the sole reason for his termination was that he did not call in and report his absence on August 4-6, 2004. (Plaintiff's Opposition at 13, 16, 18). As the record evidence demonstrates, Defendant advised Plaintiff, *inter alia*, that his absences on those days "**were not authorized and** he did not provide notification one hour prior to shift" and thus, they were deemed unexcused. (Memo, Exhibit 22, Defendant's Statement of Facts). Specifically, Plaintiff was well aware that throughout the week of August 2, 2004 Defendant was awaiting information from Plaintiff verifying his absences, as well as his ability (or inability) to perform light duty work. (Defendant's Statement of Facts, at pars. 40, 44- 49). In other words, not only did Plaintiff fail to support his absences rendering them unexcused, but he also failed to appropriately contact Defendant to advise it of his status. (*See* section III(B)(2) of Defendant's Memorandum).

9

were treated the same as Plaintiff, and employees older than him returned to work after multiple injuries/illnesses and multiple leaves of absences, Plaintiff is unable to meet this burden.

### 3. **Plaintiff's Claim Fails Under A Mixed-Motive Analysis Because Defendant Has Demonstrated It Would Have Made The Same Decision To Terminate Plaintiff For Violation Of Its Attendance Policy Despite His Age.**

Even under a mixed-motive analysis of Plaintiff's age claim, the claim still fails as a matter of law. *See Febres*, 214 F.3d at 60. A mixed-motive analysis "shifts the burden of persuasion to the employer, who then must establish that he would have reached the same decision regarding the plaintiff even if he had not taken the proscribed factor into account." *Febres*, 214 F.3d at 60; *Wynn & Wynn*, 431 Mass. at 670. In reviewing the record, the Court must not "consider the statement alone but instead look at all the evidence presented in the totality of the circumstances." *See Speen* 102 F.3d at 636. Upon review of the record in its entirety, there can be no question that Defendant has met its burden.

Defendant's attendance policy is unambiguous and Plaintiff admits Defendant explained it to him and he understood it. (Facts at ¶¶ 8, 12-13). It provides that *any* employee who has three or more unexcused absences will face termination. (Facts at ¶ 12). Indeed, Defendant has applied this policy uniformly terminating younger employees for violating the attendance policy. (Facts at ¶ 61). *See Anderson v. Home Depot U.S.A., Inc.*, 2004 WL 42569, *6 (D.Mass. 2004) (considering same facts in mixed-motive analysis as those relied on in pretext portion of the burden-shifting analysis). Employees *older* than Plaintiff who became sick and/or got hurt and went on leaves of absences, returned to work successfully. Moreover, Plaintiff was replaced by someone who is

10

*older* than him.  (*See* section III(D)(1)(2) of Defendant's Memorandum).  Plaintiff has presented no evidence to the contrary.  Thus, in looking at the totality of the evidence, Defendant has clearly satisfied its burden and demonstrated that it would have made the same decision to terminate Plaintiff even if it had not, for the sake of argument, taken his age into consideration; indeed, it did just that when it terminated a twenty-eight year old employee for the same violation.  (Defendant's Facts at ¶ 61).  For these reasons, even under the more stringent mixed-motive analysis, Plaintiff's claim of age bias fails as a matter of law.

## IV.   CONCLUSION

For the foregoing reasons, Defendant's Motion For Summary Judgment should be allowed.

YALE APPLIANCE
AND LIGHTING, INC.
By its attorneys,


/s/ Tracy Thomas Boland
Jaclyn Kugell (BBO# 561622)
Tracy Thomas Boland (BBO# 638878)
MORGAN, BROWN & JOY, LLP
200 State Street
Boston, MA 02109
(617) 523-6666

Dated: March 19, 2007


## CERTIFICATION PURSUANT TO LOCAL RULE 7.1

Pursuant to Local Rule 7.1(A)(2), I hereby certify that counsel for Defendant, Yale Appliance and Lighting, Inc., has conferred and attempted in good faith to resolve or narrow the issues addressed by the foregoing Reply Memorandum.

/s/ Tracy Thomas Boland
Tracy Thomas Boland

## **CERTIFICATE OF SERVICE**

I, Tracy Thomas Boland, hereby certify that I have caused a copy of the foregoing to be served upon Plaintiff's attorney, Daniel W. Rice, Glynn, Landry, Harrington & Rice, LLP, 10 Forbes Road, Braintree, MA 02184, by ECF on this 19th day of March, 2007.

/s/ Tracy Thomas Boland
Tracy Thomas Boland