# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____
)
DANIEL GREENWOOD,                        )
                                         )
                    Plaintiff,           )
                                         )   C.A. No. 05-10605-JLT
v.                                       )
                                         )
YALE APPLIANCE AND LIGHTING, INC.,       )
                                         )
                    Defendant.           )
_____)

### PLAINTIFF'S SUPPLEMENTAL MEMORANDUM

Now comes the Plaintiff, and submits this memorandum in accordance with the court's order dated May 17, 2007.  All other memoranda are hereby incorporated by reference.

### RELEVANT FACTS

1.     The Plaintiff, Daniel Greenwood ("Greenwood") suffered a hernia on November 12, 2004, while working for the Defendant, and received worker's compensation benefits as a result of this injury.[1]

2.     Greenwood was absent from work from November 13, 2003 until January 26, 2004.[2]  On January 27, 2004, within the 12 weeks of leave he was entitled to receive under the FMLA, he resumed employment, working on light construction projects, and helping as a runner in the office.[3]

_____
[1] Def.'s Statement of Facts, ¶ 20.
[2] Id., ¶ 21.
[3] Id. ¶ 23.

3.      By letter dated, January 22, 2004,[4] Greenwood's treating physician, Dr.

Shantu Basu, wrote:

> TO WHOM IT MAY CONCERN:
>
> This is to state that I saw Mr. Daniel Greenwood in my office today for a postoperative visit. He has no discomfort at this time.
>
> On exam he is healing very well.
>
> I recommended he can return to work for one-(1) week light-duty.
>
> He will be re-evaluated next week. If at that time he should be asymptomatic at that time he can return to full-duty at that time.

4.      Notwithstanding Dr. Basu's note clearing Greenwood for full-duty by

January 29, 2004, the Defendant continued to assign Greenwood work on light

construction and as a runner until February 13, 2004.[5]

5.      During the time the Defendant assigned Greenwood this work, Greenwood

worked his usual 40 hour workweek and received his regular rate of pay.[6]

6.      No representative of the Defendant told Greenwood that the time period

he was assigned this work would be counted against any leave he might have been

entitled to under the Family Medical Leave Act.[7]

7.      No representative of the Defendant told Greenwood that he could refuse

his assignment.[8]

8.      At the time he was assigned this work, Greenwood believed he was

---

[4] This letter is attached as Exhibit A; *see also* fn. 12 of this court's May 16, 2007 order, citing Greenwood's deposition testimony, Def.'s Ex. 1, p. 200 (16-19).
[5] Def.'s Statement of Facts, ¶ 26.
[6] *See* Def.'s Statement of Facts, ¶ 26; *see also* Pl.'s Ex. 3, Greenwood Aff./4
[7] Supplemental Affidavit of Daniel Greenwood, attached here as Ex. B, ¶ 6.
[8] *Id.*

fulfilling the Defendant's present operational needs.[9]

9.    No representative of the Defendant told Greenwood that he had a choice not to accept the work the Defendant assigned him, or that he might suffer prejudice to his rights under the FMLA if accepted the work, and did not resume work as a driver.[10]

10.    If Greenwood had been informed by the Defendant that his assignment to light construction work and as a runner were diminishing his FMLA leave entitlement, he would have requested to resume his usual duties as a driver.[11]  Greenwood could have performed his duties as a driver on the day he returned to work, January 27, 2004, or sooner, if he had been compelled to do so to preserve his employment rights.[12]

## ARGUMENT

### I.    THE FMLA DOES NOT CALL FOR THE REDUCTION OF LEAVE ENTITLEMENT BY THE TIME AN EMPLOYEE IS ON LIGHT DUTY.

First, as a matter of law, the time an employee covered by the FMLA is assigned light duty may not be counted against his statutory entitlement to 12 weeks of FMLA leave entitlement. 29 U.S.C. § 2612(a). The FMLA does not provide for such an offset, and contrary to the Defendant's argument (and the court's interim commentary on this issue), the Regulations[13] issued by the Department of Labor do not provide that this substantive right can be diminished by an employer's assignment of light duty work.  The DOL made this clear in an advisory opinion it issued on March 10, 1995.[14]  Addressing the issue of the "Family and Medical Leave Act of 1993 (FMLA) as it relates to the

---

[9] Id.
[10] Id., ¶ 7.
[11] Id.
[12] Id..
[13] 29 C.F.R. §§ 825.00 et seq.
[14] Exhibit C; see http://www.dol.gov/esa/whd/opinion/FMLA/prior2002/FMLA-55.htm

Americans With Disability Act (ADA) with respect to light duty accommodation and

medical certification," and referring directly to 29 CFR 825.220(d), the Regulation

section at the crux of the instant dispute, the DOL advised that light duty "cannot" be

counted against FMLA leave entitlement:

> If an employee on FMLA leave voluntarily accepts a light duty
> assignment, the final regulations have been amended at 29 CFR
> 825.220(d) to provide that such an employee retains rights under FMLA to
> job restoration to the same or an equivalent position held prior to the start
> of the leave for a cumulative period of up to 12 workweeks. This
> "cumulative period" would be measured by the time designated as FMLA
> leave for the workers' compensation leave of absence and the time
> employed in a light duty assignment.
>
> **The period of time employed in a light duty assignment cannot count,
> however, against the 12 weeks of FMLA leave.**  (Emphasis added, and
> relevant section highlighted in attachment.)[15]

The DOL's opinion should be viewed as dispositve of this issue, and exposes the

cases[16] on which the Defendant has relied to support its argument as erroneous. "When

interpreting an agency regulation, courts must give substantial deference to the agency's

own interpretation of its regulations, so long as that interpretation is consistent with the

regulation and 'reflect[s] the agency's fair and considered judgment on the matter in

question.'" *Rucker v. Lee Holding Co.*, 471 F.3d 6, 12  (1st Cir. 2006), *quoting Auer v.*

*Robbins*, 519 U.S. 452, 461-62, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997).

As this principle applies here, the DOL's interpretation of the FMLA and its

Regulation are consistent with the operative Regulation's plain language, which, given a

fair reading, cannot be viewed as diminishing an employee's entitlement to 12 weeks of

---

[15] Advisory Opinion, Ex. C.
[16] *Artis v. Palos Community Hospital*, 2004 Lexis 20150 at 19-20 (N.D. Ill. Sept. 22, 2004); *Wright v. Owens-Brockaway Plastics, Inc.*, No. 02-207, 2004 U.S. Dist. Lexis 8534, at 16-19 (S.D. Ind. May 14, 2004)

leave:

> Employees cannot waive, nor may employers induce employees to waive, their rights under FMLA. For example, employees (or their collective bargaining representatives) cannot "trade off" the right to take FMLA leave against some other benefit offered by the employer. This does not prevent an employee's voluntary and uncoerced acceptance (not as a condition of employment) of a "light duty" assignment while recovering from a serious health condition (see § 825.702(d)). In such a circumstance the employee's right to restoration to the same or an equivalent position is available until 12 weeks have passed within the 12-month period, including all FMLA leave taken and the period of "light duty."

This section makes no specific or general reference to the possible exhaustion of leave entitlement. Rather, it provides protection to employees by prohibiting employers from coercing them to exchange their non-waivable, individual statutory rights to leave for collectively bargained-for or individually available benefits ("[e]mployees cannot waive, nor may employers induce employees to waive, their rights under FMLA."). It does permit an employee, however, to voluntarily accept a light duty assignment ("[t]his does not prevent an employee's voluntary and uncoerced acceptance (not as a condition of employment) of a "light duty" assignment . . .."

Most importantly, the last sentence of the Regulation does not provide that a light duty assignment will reduce an employee's leave entitlement. Rather, as the DOL states in its advisory opinion, it provides that light duty and prior FMLA leave ("including all FMLA leave") may be counted together toward the 12 week period an employer is required to <u>restore</u> the employee to the "same or an equivalent position" in accordance with § 2614 (a)(1)(A)(B) of the FMLA. ("In such a circumstance the employee's right to restoration to the same or an equivalent position is available until 12 weeks have passed within the 12-month period, including all FMLA leave taken and the period of 'light

duty.'")

Significantly, the DOL's determination that FMLA leave and light duty might be combined in considering the 12 weeks for which an employer is obligated to restore an impacted employee to his same or an equivalent job is compatible with its determination that an employee cannot be charged with using FMLA leave while he is on light duty. Ostensibly, an employer makes a light duty assignment to meet its operational needs. During such an assignment, the employee accumulates the "hours of service" necessary to meet the 1,250 hour threshold in 12 months under § 2611(2)(A)(ii) of the FMLA.  It makes no sense that an employee on light duty, therefore, might at the same time be considered to be exhausting his leave entitlement as though he were on "leave", that is, completely absent from work. [17]  On the other hand, given the FMLA's stated purpose of balancing the interests of employees in preserving their jobs with the legitimate interests of employers, it is fair to recognize that an employer should not have to wait more than 12 weeks to fill such an employee's vacated position, particularly since the employee who vacated the position is working elsewhere for the employe, and would thus suffer no harm. [18]

The concept of leave entitlement, set forth in the FMLA at § 2612, therefore, is undiminished by this Regulation's provision that an employee can accept a non-coerced light duty assignment.  Accordingly, this court should endorse the DOL's determination that "[t]he period of time employed in a light duty assignment cannot count . . . against

---

[17] See definition of "leave" at reference.com/browse/all/leave:  "permission to be absent, as from work or military duty: *The firm offers a maternity leave as part of its benefit program.*"

[18] The stated purposes of the FMLA are "(1) to balance the demands of the workplace with the needs of families . . . ; (2) to entitle employees to take reasonable leave for medical reasons . . . ; [and] (3) to accomplish the[se] purposes . . . in a manner that accommodates the legitimate interests of employers . . . ." 29 U.S.C. § 2601(b)(1)-(3).

the 12 weeks of FMLA leave," and reject the District Court decisions cited by the Defendant as erroneous.

## II.   THE DEFENDANT PREJUDICED GREENWOOD BY FAILING TO TELL HIM THAT IT CONSIDERED ITS ASSIGNMENT OF LIGHT CONSTRUCTION AND RUNNER WORK AS COUNTING AGAINST HIS FMLA LEAVE ENTITLEMENT.

The court has specifically inquired whether the Defendant's failure to designate Greenwood's leave as FMLA leave prejudiced Greenwood. It must be viewed as having done so.

Although by letter dated January 22, 2004,[19] Greenwood's physician opined that Greenwood could resume full-time work after just a week of light duty, the Defendant continued to assign Greenwood to light duty work until February 13, 2004, without telling Greenwood that this assignment was reducing his FMLA leave entitlement.[20] Had Greenwood been offered the choice of performing work as a driver and not performing work that might diminish his FMLA rights, either in accordance with his physician's clearance (January 29), or two days earlier when he actually returned (January 27), he would have done so.[21] Greenwood has been prejudiced, therefore, because the Defendant unilaterally held him in a light duty position that it contends exhausted his leave entitlement, and therefore, according to the defense to his claim raised by the Defendant in this action, left him without leave entitlement or job restoration rights when he suffered diverticulitis in the summer of 2004.

---

[19] Ex. A.
[20] Ex. B, Greenwood Aff., ¶¶ 6-7.
[21] Greenwood Aff., Ex. B, ¶¶ 6-7. With respect to Greenwood's assertion that he would have worked as a driver, *see also* ¶ 4 of Greenwood's Affidavit, in which he recalls being assigned to help deliver a refrigerator on his first day back to work.

III.    **GREENWOOD'S LIGHT DUTY ASSIGNMENT MAY BE VIEWED AS AN ASSIGNMENT TO AN "EQUIVALENT" POSITION FROM WHICH LEAVE COULD NOT BE REDUCED, AND IF IT IS NOT, BASED ON HIS PHYSICIAN'S CLEARANCE, THE ASSIGNMENT MUST BE VIEWED AS A VIOLATION OF THE DEFENDANT'S OBLIGATION TO HAVE RESTORED HIM TO THE SAME OR EQUIVALENT POSITION.**

Alternatively, the Defendant's assignment of Greenwood to light duty work may be viewed as an agreement between Greenwood and the Defendant that he would accept a different job from the "equivalent position" he was statutorily entitled to be restored to upon his return from leave.   Under the FMLA, an employer must restore an employee to the same or "equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment."[22]  The Regulations provide, however, that upon agreement between an employer and employee, an alternative arrangement can be struck:

> FMLA does not prohibit an employer from accommodating an employee's request to be restored to a different shift, schedule, or position which better suits the employee's personal needs on return from leave, or to offer a promotion to a better position. However, an employee cannot be induced by the employer to accept a different position against the employee's wishes.[23]

Here, Greenwood's light duty job was different than his driver's duties, but he was paid the same, worked the same hours, and reported to work at the same place.  It never occurred to Greenwood that he was not obligated to accept this assignment, nor did he wish to, and it may be inferred from his continued assignment beyond the date he was medically cleared to return to full-time work, that Greenwood was meeting the

---

[22] 29 U.S.C. § 2614 (a) and (b).
[23] 29 C.F.R. § 825.215(e)(4).

8

Defendant's operational needs with this assignment.  Given these circumstances, it would appropriate for the court to imply an agreement[24] between Greenwood and the Defendant that Greenwood would work his light duty assignment rather than his prior assignment or a "virtually identical one", because both he and the Defendant were satisfied with the arrangement.[25]

Indeed, the parties' satisfaction with Greenwood's modified work assignment at the time it took place exposes the injustice that would result if the Defendant is permitted to designate Greenwood's assignment as reducing his leave retroactively, and thus stripping him of his job restoration rights.   Viewed in equitable terms, by its light duty assignment, the Defendant benefited from relieving its expense of carrying Greenwood on industrial accident leave and profited from his labor.  Many months after it realized this benefit, and for expeditious reasons only related to its legal defense of Greenwood's FMLA claim, the Defendant has stated  for the first time that Greenwood involuntarily ceded his FMLA because it gave him light duty work.  As the court has previously commented in this case, given these circumstances, the Defendant cannot have it both ways.

Next, if the court does not view Greenwood's light duty assignment as an agreed upon arrangement permitted under the Regulations, it must find that Greenwood's light duty assignment violated the FMLA because he was medically cleared to return to work as a driver beyond the time he was cleared to return for full-duty.  As noted, under the

---

[24] John D. Calamari and Joseph M. Perillo, *Contracts*, § 1-12 (3d ed. 1987).
[25] The parties' satisfaction with Greenwood's modified work assignment at the time it took place exposes the injustice that would result if the Defendant is permitted to designate Greenwood's assignment as reducing his leave retroactively.   Viewed in equitable terms, the Defendant should not be permitted to have benefited from relieving its expense of carrying Greenwood on industrial accident leave and profiting from his labor, only to later, in defense of Greenwood's FMLA claim, claim for the first time that Greenwood involuntarily ceded his FMLA rights during the time of his light duty assignment.  The Defendant cannot have it both ways.

FMLA, based on Greenwood's medical clearance, as of January 29, the Defendant had to

restore him to the same or equivalent position. 29 U.S.C. § 2614 (a)(1)(A)(B).

Assuming the Defendant claims that Greenwood's light duty job was not "equivalent", it

must be viewed as having violated its duty to restore him to the same or equivalent

employment by holding him in the light duty assignment. Such an illegal assignment

cannot be viewed as having concomitantly stripped Greenwood of his FMLA leave

entitlement. [26]

### IV.   GREENWOOD'S RETALIATION CLAIM CAN SURVIVE EVEN IF HIS SUBSTANTIVE CLAIM FAILS.

Finally, to clarify a response made to the court's inquiry at oral argument,

Greenwood's retaliation claim can survive even if his retaliation claim fails:

> Our law is clear that an FMLA plaintiff may pursue a retaliation
> claim even if there is no claim of violation of substantive rights to leave.
> *See Hodgens*, 144 F.3d at 159-60 (describing the independent causes of
> action under the substantive and proscriptive provisions of the FMLA);
> *accord Hunt v. Rapides Healthcare Sys., LLC*, 277 F.3d 757, 769 (5th
> Cir.2001) ("The [FMLA] provides two distinct causes of action, to which
> courts apply different analyses."). Further, the failure of a substantive
> claim of denial of leave does not foreclose a retaliation claim. *See Hunt*,
> 277 F.3d at 768-69 (noting that a plaintiff "need not establish a violation
> of the substantive, prescriptive provisions of the FMLA to allege a
> violation of the proscriptive provisions").

*Colburn v. Parker Hannifin/Nichols Portland Div.* 429 F.3d 325, 333 (1st Cir.

1995).

---

[26] *See Welch v. Wesson*, 72 Mass. 505, *505 (1856 ) WL 5730, **1 (Mass.), *citing Gregg v. Wyman,* 4
Cush. 322; *Woodman v. Hubbard*, 5 Foster, 67. *Phalen v. Clark*, 19 Conn. 421; *Simpson v. Bloss*, 7 Taunt.
246. ("[w]e presume it may be assumed as an undisputed principle of law, that no action will lie to recover
a demand, or a supposed claim for damages, if, to establish it, [a party] requires aid from an illegal
transaction, or is under the necessity of showing, and depending in any degree upon an illegal agreement, to
which he himself had been a party."

# CONCLUSION

Greenwood's entitlement to leave may not be diminished by the period of his light duty assignment. Greenwood was prejudiced by the Defendant's failure to notify him that his light duty assignment, which the Defendant extended beyond the time prescribed by his physician, was diminishing his leave, and he would have opted to refuse the assignment had he known this. Greenwood's assignment to light duty may be viewed as an accommodation assignment from which leave cannot be deducted, but if it is not, the Defendant must be viewed as having violated Greenwood's rights by failing to restore him to his same or equivalent position, and may not have reduced his leave entitlement by violating his job restoration rights.

Respectfully submitted,

THE PLAINTIFF,

By his attorney,

s/Daniel W. Rice
Daniel W. Rice, BBO # 559269
GLYNN, LANDRY,
HARRINGTON & RICE, LLP
10 Forbes Road
Braintree, MA 02184
(781) 849-8479

Dated: May 25, 2007

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on May 24, 2007.

/s/ Daniel W. Rice
Daniel W. Rice



SHANTANU BASU, M.D., F.A.C.S

125 Parker Hill Avenue, Suite 385
Boston, Massachusetts 02120
(617) 277-5587
Fax (617) 232-1660



New England
Baptist
Hospital

*Diplomate American Board of Surgery*

TUFTS UNIVERSITY
SCHOOL OF MEDICINE
*Assistant Clinical Professor
of Surgery*

January 22, 2004

Re:  Daniel P. Greenwood
Claim #:  8309880673
DOI:  11/12/03

TO WHOM IT MAY CONCERN:

This is to state that I saw Mr. Daniel Greenwood in my office today for a postoperative visit.  He has no discomfort at this time.

On exam he is healing very well.

I recommended he can return to work for one-(1) week light-duty.

He will be re-evaluated next week.  If at that time he should be asymptomatic at that time he can return to full-duty at that time.

Sincerely,

Shantanu Basu, M.D.

SB:cmb

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| DANIEL GREENWOOD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 05-10605-JLT |
| v. | ) | |
| | ) | |
| YALE APPLIANCE AND LIGHTING, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## AFFIDAVIT OF DANIEL GREENWOOD

1.  I, Daniel Greenwood, being duly sworn, do hereby depose and state under oath as follows:

2.  I make this affidavit on the basis of my personal knowledge, except as to matters I believe to be true, which I make upon information and belief.

3.  After I suffered a hernia in November of 2003, and received worker's compensation benefits because I suffered this injury on the job, sometime in January 2004, Jim Raposa called me and told me to return to work at Yale on January 27, 2004.

4.  My work was assigned by Jim Raposa. Raposa had me do warehouse and light construction work, worked as a runner, and had me work on some deliveries, including, on the first day back, helping deliver a refrigerator. I did this kind of work until February 13, 2004, when I started working as a driver again.

5.  During this whole time, I worked my usual 40 hour workweek and received my regular rate of pay.

6.  No one from Yale told me that during the time they did not assign me to

work as a driver would be counted against my Family Medical Leave Act rights, or that I had any right to refuse this assignment. I thought I was doing work Yale needed done.

7.    No one from Yale ever told me that I was medically cleared to return to work as a driver in January of 2004. If I had known that I was going to risk using up my FMLA leave by working light duty instead of as a driver, I would have started working as a driver either on the day I returned to work, the day I have learned that my doctor cleared me to return (January 29), or would have considered returning as much as week or two earlier. The job at Yale paid well, and I needed the income to support my family. I had never had absenteeism problems in the many years that I had worked there, and intended to remain employed. If protecting my rights meant going back to work as a driver by a date certain to avoid using up my FMLA leave, I would have done so.

Signed under the pains and penalties of perjury this 25th day of May, 2007.

_____
Daniel Greenwood

March 10, 1995                                                                  FMLA-55

Dear **Name***,

This is in response to your letter forwarding correspondence from **Name***.  **Name*** expresses concern about the Family and Medical Leave Act of 1993 (FMLA) as it relates to the Americans With Disability Act (ADA) with respect to light duty accommodation and medical certification.

In enacting FMLA, Congress stated in Section 2 that there is inadequate job security for employees who have serious health conditions that prevent them from working for temporary periods. Congress also stated in Section 2 that it is the purpose of this Act to entitle employees to take reasonable leave for medical reasons. Pursuant to Section 102(a)(1)(D), an eligible employee is entitled to a total of 12 workweeks of unpaid leave during any 12-month period because of a serious health condition that makes the employee unable to perform functions of the employee's position. Sections 104(a)(1)(A) and (B) provide that upon return from FMLA leave, employees must be restored to their original or to an equivalent position with equivalent pay, benefits, and terms and conditions of employment. Section 105 prohibits the employer from interfering with or discriminating against an employee who exercises his or her rights under FMLA. The position taken by the Department that prohibits an employer from requiring an employee to accept a "light duty" position in lieu of FMLA leave is the appropriate construction of the statutory language.

Leave provisions of FMLA are wholly distinct from the reasonable accommodation obligations of employers covered under the ADA. While FMLA provides an eligible employee the right to a temporary medical leave of absence for a serious health condition, ADA prohibits employment discrimination against "qualified individuals with disabilities." Reasonable accommodation is a critical component of the ADA's assurance of nondiscrimination and is any change in the work environment or in the way things are usually done, that results in equal employment opportunity for an individual with a disability. An employer under ADA must make a reasonable accommodation to the known physical or mental limitations of a qualified applicant or employee with a disability unless it can show that the accommodation would cause an undue hardship on the operation of its business. In the case of an employee with a serious health condition under FMLA who is also a qualified individual with a disability under ADA, requirements from both laws must be observed and applied in a manner that assures the most beneficial rights and protection. For example, a reasonable accommodation under ADA might be accomplished by providing an individual with a disability with a part-time job which does not ordinarily provide health benefits. Under FMLA, an eligible employee would be permitted to work a reduced leave schedule for up to 12 workweeks of leave in any 12-month period with group health plan benefits maintained during this time. Once the FMLA leave had been exhausted in the 12-month period, the employer would have no further obligations under FMLA and would follow the requirements of ADA and any other applicable law.

Beside the ADA, other laws such as state workers' compensation laws may require employers to offer employees the opportunity to take a restructured or light duty job. Under such circumstances, the employer must still afford an employee his or her FMLA rights while at the same time fulfilling the requirements under the respective state law. For example, under a state workers' compensation program, an employer may be required to offer an employee a light duty assignment when the appropriate medical authority has indicated that the person is able to return to work on a limited basis. Such an employee could elect to exercise the remainder of his or her FMLA leave rather than accept the light duty assignment. This does not mean, however, that the employee would be entitled to continue to receive benefits under the workers' compensation program. If that program is structured in such a way as to end benefits at the point at which the employee is deemed medically able to accept a light duty assignment and one is offered by the employer, but is turned down by the employee, the employer's obligations to provide such benefits may cease.

If an employee on FMLA leave voluntarily accepts a light duty assignment, the final regulations have been amended at 29 CFR 825.220(d) to provide that such an employee retains rights under FMLA to job restoration to the same or an equivalent position held prior to the start of the leave for a cumulative period of up to 12 workweeks. This "cumulative period" would be measured by the time designated as FMLA leave for the workers' compensation leave of absence and the time employed in a light duty assignment.

The period of time employed in a light duty assignment cannot count, however, against the 12 weeks of FMLA leave. Examples of how FMLA interacts with federal and state anti-discrimination laws, such as the ADA, may be found at Regulations 29 CFR 825.702.

In general, the purpose of the medical certificate is to allow employers to obtain necessary information from a health care provider to verify that an employee in fact has a serious health condition, and the likely periods of absence by the employee. The medical certificate has been revised, copy enclosed, to require certification as to which aspect of the serious health condition definition applies, and to state the medical facts to support the definition. The regulations at 29 CFR 825.306 and the form (WH-380) have also been amended to no longer provide for diagnosis, and make

clear, consistent with the ADA and privacy concerns, that all information on the form relates only to the condition for which the employee is taking FMLA leave.

For information, we are enclosing a copy of the final rule which will become effective on April 6, 1995 and a copy of the medical certification, form WH-380, as revised December 1994. I hope that the above fully addresses the concerns expressed by Name*. If we may be of further assistance, please do not hesitate to contact me.

Sincerely,

Daniel F. Sweeney
Deputy Assistant Administrator

Enclosures

cc: Equal Employment Opportunity Commission

*\* Note: The actual name(s) was removed to preserve privacy in accordance with 5 U.S.C. 552 (b)(7).*