UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DANIEL GREENWOOD,<br><br>        Plaintiff,<br><br>v.<br><br>YALE APPLIANCE AND LIGHTING, INC.,<br><br>        Defendant. | Civil Action No. 05-10605-JLT |

MEMORANDUM
August 28, 2007

TAURO, J.

    Plaintiff Daniel Greenwood alleges that the Defendant Yale Appliance and Lighting, Inc., fired him after missing work while ill with diverticulitis in July and August 2004. He asserts Defendant's action violated substantive provisions of the Family Medical Leave Act ("FMLA"). Plaintiff also alleges Defendant's actions constitute age discrimination and retaliation under FMLA and Massachusetts workers' compensation laws. Presently at issue is Defendant's Motion for Summary Judgment on all remaining claims of Plaintiff's complaint.

**Background**

    Drawing reasonable inferences in favor of the plaintiff, the factual record is set forth below. In 2003, Plaintiff suffered a work-related injury, a hernia. As a result, Plaintiff missed work and received worker's compensation benefits pursuant to Mass. Gen. Laws c. 152, starting on November 12, 2003. It is undisputed that Plaintiff took ten weeks and two days of leave from work between November 13, 2003, and January 26, 2004. According to Plaintiff, Plaintiff was cleared to return to full duty on January 29, 2004. But by agreement of the Parties, Plaintiff

returned doing light duty and did not return to full duty on February 17, 2004. Plaintiff was never told that Defendant would count time on light duty as leave time. Plaintiff avers that had he known this, he would have returned to full duty on January 29, 2004, when permitted by his doctor.

On July 28, 29, and 30, 2004, Plaintiff was hospitalized with diverticulitis and missed work. During his hospitalization, Plaintiff was contacted by James Rapoza, a manager employed by the Defendant. Plaintiff informed Rapoza that he did not know when he would be released from the hospital, or when he might be able to return to work. As such, he had to remain on leave. Plaintiff told his employer he would follow up with his doctor on Monday August 2, 2004.

On or about August 3, 2004, Plaintiff met with Rapoza at Yale's facility in Norwood, MA, and indicated he would not be able to return to work until he was reevaluated by his physician on Monday, August 9, 2004. It is undisputed that Plaintiff told Rapoza that he was unable to work due to his sickness. Plaintiff asserts that his doctor told him to take the week off of work. Plaintiff asked if he could use his vacation days, but his employer ultimately refused. At various times throughout the week, Rapoza asked Plaintiff for medical authentication that he was unable to work, even at light duty.

Plaintiff was not in touch with Defendant on Wednesday August 4th or Thursday August 5th. On August 6th, Plaintiff appeared at work and provided Lewis Frazer, Rapoza's supervisor, with his hospital release form, which did not indicate a restriction on work. Frazer again asked for documentation. On Monday, August 9, 2006, Plaintiff did ultimately provide Defendant with a letter from his doctor noting that Plaintiff was under his care and could return to work on "Tues. August 9 [sic]." Defendant argues that this document is inadequate in that it does not

explain Plaintiff's absences and does not attest to whether he could have worked light duty during the preceding week. Plaintiff states that Defendant never provided him with any FMLA template forms which showed what information a doctor's note should contain. When Plaintiff did bring in a note, Frazer took it. Frazer told Plaintiff to depart, and that he would consult with Yale's lawyer about Plaintiff's status.

By letter dated August 12, 2004, Yale notified Plaintiff that he was terminated from employment. Defendant terminated Plaintiff for consecutive un-excused absences during the week of August 2, 2004, a violation of the employee handbook policy punishable by termination.

Plaintiff was forty-one at the time of his termination. He was replaced by a forty-two year old. Plaintiff complains of age discrimination and retaliation for taking FMLA leave and workers compensation based on the following comments, as relayed in Plaintiff's affidavit. When Plaintiff was contemplating going to the hospital on July 27, 2004, Mr. Frazer said, "I paid to have your belly fixed last year. You better be in tomorrow."[1] When Plaintiff appeared on Friday August 6, 2004, he says the following conversation occurred:

> I was also asked by Frazer how old I was and whether I thought I could still do my job because he had noticed that I had been out hurt quite often lately. He stated that I may be getting too old to carry out my duties on the truck. He stated, "If that is the case, I have no other job duties for you." He added, "How much longer do you think you can be doing this job?"[2]

In his deposition, Greenwood related the exchange as follows:

> And, you know, he told me, "Well, you seem to be getting hurt a lot," and this and that. "Maybe you're too old for that. You know, maybe you're too old to keep doing what you're doing." I told him, you know, I mean I got hurt, you know, the

---

[1] Aff. of Daniel Greenwood, Paper # 26-4, ¶ 5.

[2] Id., ¶ 7.

3

previous year, you know what I mean, doing their work and doing the best I could. You know, I have that hernia injury, you know, and he was just -- "Well, you're getting hurt. You're getting hurt too much. How old are you," and this and that. Basically telling me I couldn't do what I was doing.[3]

Defendant employs other workers who are older than Plaintiff, or who have missed time from work due to injuries.

**Discussion**

When a court resolves a motion for summary judgment, it should look to the actual evidence, in the form of affidavits, answers to deposition questions, and attached exhibits, to determine if there is a genuine dispute of material fact that must be resolved by the jury.[4]  Once the moving party identifies a deficiency in the evidence, the non-moving party must present evidence demonstrating a trial-worthy dispute.[5]  Though all inferences should be drawn in favor of the non-moving party, such party may not rely on "conclusory allegations, improbable inferences, and unsupported speculation."[6]  If no material fact is in dispute, the court may render judgment, applying principles of law to the undisputed facts.[7]  Before beginning such an analysis, the court must determine what evidence it may rely on, by resolving any motions to strike.

    A.    *Plaintiff's <u>Motion to Strike Defendant's Exhibit 15</u>*

After Rapoza and Frazer terminated Plaintiff, they prepared a memorandum

---

[3] Greenwood Dep., Paper # 24-2, 187:12-23.

[4] <u>Rojas-Ithier v. Sociedad Espanola de Auxilio Mutuo y Beneficiencia de Puerto Rico</u>, 394 F.3d 40, 42 (1st Cir. 2005).

[5] <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).

[6] <u>Mullin v. Raytheon Co.</u>, 164 F.3d 696, 698 (1st Cir. 1999).

[7] Fed. R. Civ. P. 56(c).

detailing their conversations with Plaintiff and their reasons for firing him. Plaintiff argues that these conversations are hearsay within hearsay. Defendant responds that the conversations themselves are admissible as verbal acts. This court agrees. The existence of the conversations themselves are relevant. In this way, recounting the conversation simply recalls who said what to whom, and is not hearsay.

Defendant next argues that the memorandum is a business record. Plaintiff responds that the memorandum was prepared in anticipation of litigation. But this court need not resolve this dispute at this time. Defendant has submitted supplemental affidavits of Frazer and Rapoza which re-count the disputed conversations. These sworn affidavits are admissible at summary judgment, and the court will DENY Plaintiff's Motion to Strike, without prejudice to re-raising the issue at trial should Defendant attempt to admit the memorandum.

### B. Defendant's Motion to Strike Portions of Additional Material Facts

Defendant objects to Plaintiff's characterization of whether Defendant asked Plaintiff for a vocational assessment. Because the court does not find this fact material, the motion is DENIED AS MOOT in this respect.

Defendant objects to Plaintiff's statement of fact that Rapoza did not ask Greenwood when he might be able to return to work, on August 2, 2004. It is undisputed that Defendant sought to have Plaintiff produce medical documentation, and that, in response, Plaintiff produced a doctor's note. Disputes as to the specifics of this exchange are not material for the purposes of summary judgment, and the motion is DENIED AS MOOT in this respect.

Defendant objects to Plaintiff's statement of fact that Plaintiff's physician told him he could not perform light duty and that Plaintiff shared this fact with Rapoza. This statement, does

to some extent conflict with Plaintiff's deposition testimony, where he indicates that the doctor told him to take the week off, but that he never specifically asked about light duty. But, drawing all reasonable inferences in favor of the Plaintiff for purposes of summary judgment, the court will accept, as a material fact, that Plaintiff was under doctor's orders not to work for this week. Defendant's motion is DENIED to the extent it seeks to require the court to adopt a different factual proposition.

Finally, Defendant seeks to strike Plaintiff's additional affidavit, wherein he restates the alleged remarks made by Frazer, arguing such restatements are inconsistent with his deposition testimony. Both statements are included above in the facts section. This court does not see the statements as so contradictory that they warrant being stricken. Before the ultimate fact finder, Plaintiff will again be called upon to recall any statements made to him. Though prior inconsistencies may be used against him, his prior deposition statements are not so inconsistent that no jury would credit his testimony, as made in the affidavit. Accordingly, the Defendant's Motion to Strike is DENIED in this regard.

        C.     *Motion for Summary Judgment*

Plaintiff advanced the following counts: (1) Violation of the FLSA; (2) Violation of G.L. c. 149, § 148;[8] (3) Violations of the Family Medical Leave Act ("FMLA") - Termination for Absences Protected under the FMLA; (4) Violation of the FMLA - Retaliatory Discharge; (5) Violation of the Age Discrimination in Employment Act ("ADEA"); (6) Violation of G.L. c. 151B - Age Discrimination; and (7) Violation of G.L. c. 152, § 75B(2) - Retaliatory Discharge.

---

[8]As of December 2, 2006, Plaintiff has dismissed counts one (1) and two (2) with prejudice and seeks no further consideration of those claims. At present, five (5) claims remain pending.

1.      Count Three – violations of the FMLA

Employees have twelve weeks of FMLA protected leave time per twelve month period.[9] In an earlier ruling this court explained why, as a matter of Department of Labor regulations, light duty work would count as leave, within the meaning of FMLA.[10] Though Plaintiff subsequently submitted further briefing challenging this conclusion, the court declines to reconsider. The court also determined that if Defendant failed to give Plaintiff notice of this leave, and Plaintiff was injured as a result, Plaintiff might be able to state a claim for failure to provide adequate notice.[11] In response, Plaintiff submitted further briefing explaining how he would have returned to work earlier had he known light duty would use up his available FMLA leave. Defendant responded that even had Plaintiff come back on January 29, 2004, he would still have used eleven weeks and two days of his FMLA time. Plaintiff's hospitalization from July 28-30, 2004, would have used the rest of his twelve weeks. This court agrees. Defendant, therefore, provided Plaintiff with 12 weeks of medical leave as required by FMLA, and there is no substantive violation of FMLA's provisions. On the undisputed facts, and applying the law as stated in this court's earlier memorandum, Count Three fails as a matter of law.

2.      Count Four – FMLA retaliation

To make out a prima facie case of FMLA retaliation, Plaintiff must show that he availed himself of a protected right under FMLA, that he was adversely affected by an employment

---

[9] 29 U.S.C. § 2612(a)(1) (2007).

[10] Memorandum and Order, Paper #38.

[11] Id.

decision, and that there is a causal connection between the two.[12]  An action for FMLA retaliation may lie even where there is no FMLA violation.[13]  Here, taking the facts in the light most favorable to the Plaintiff and only counting one week of light duty against his available FMLA leave, Plaintiff took protected FMLA leave on July 28, 29, and 30, 2004, and was terminated two weeks later, on August 12, 2004.  This close temporal proximity is adequate to establish an inference of causation.[14]

Defendant argues that even if Plaintiff can establish a prima facie case, it has adequately met its burden of showing that Plaintiff was fired for his consecutive unexcused absences, a non-retaliatory motive for the termination.  But Defendant's arguments are unconvincing, because it has no evidence that Raposa and Frazer were aware that Plaintiff had exhausted his FMLA time.  Greenwood never provided notice that light duty could be counted as leave, and there is no reason to believe that Frazer and Rapoza acted based on an analysis of complex Department of Labor regulations.  In fact, considering the alleged statements made by Plaintiff's supervisors, a reasonable jury could conclude the opposite.

Furthermore, an inference of retaliatory animus could also be supported by the fact that Defendant appeared to have not properly requested medical certification for the missed days.  FMLA sets up the following framework for obtaining medical certification that a leave is necessary:

> The employer has the right under the FMLA to require that the employee support

---

[12] Hodgens v. General Dynamics Corp., 144 F.3d 151, 161 (1st Cir. 1998).

[13] Colburn v. Parker Hannifin/Nichols Portland Div., 429 F.3d 325, 333 (1st Cir. 2005).

[14] Hodgens, 144 F.3d at 170.

>her request for leave with medical certification issued by the employee's health care provider. To exercise this right, the employer must give a written notice of a requirement for medical certification each time the employer requires it, and must advise the employee of anticipated consequences of the employee's failure to provide adequate certification. In general, the employer must request certification at the time the employee gives notice or, in cases of unforeseen leave, within two days after leave commences. Once requested, the employee must provide a copy of such certification to the employer.[15]

Plaintiff notes that the Defendant never gave Plaintiff a formal written request. Furthermore Plaintiff did ultimately produce a doctor's letter stating that he had been treated for diverticulitis and could return to work on August 10. Defendant argues that this letter does not speak to whether Plaintiff could not work during the prior week. A reasonable jury could disagree. If, on August 9th, the doctor asserts that Plaintiff was sick and could go back to work on August 10th, a reasonable jury could conclude that Plaintiff could not work prior to that date. Further, if Defendant was not satisfied, it had the duty to "advise the employee accordingly and 'provide the employee a reasonable opportunity to cure any such deficiency.'"[16] Although Defendant made many requests for medical documentation, there is no evidence that Defendant gave Plaintiff such an opportunity once he presented Frazer and Rapoza with a certification – rather his supervisors took his note and told him to go home.

Although Plaintiff in fact had no medical leave left, Defendant fired him instead for the purported reason that he had not properly excused his leave. Defendant argues that it had no obligation to request a formal medical certification, and that it could fire Plaintiff by failing to offer the "very basic information" Defendant sought. But Defendant's failure to deal formally

---

[15] Wheeler v. Pioneer Developmental Servs., 349 F. Supp. 2d 158, 166 (D. Mass. 2004) (Ponsor, J.).

[16] Id. at 167.

with Plaintiff by telling him exactly what was required and giving him a reasonable chance to cure, could lead a reasonable jury to infer the Defendant simply wanted to get rid of an infirm worker who had just taken a lot of FMLA leave. Accordingly, Defendant's Motion for Summary Judgment will be DENIED as to Count Four.

### 3. Counts Five and Six – Age Discrimination

Plaintiff cannot establish a prima facie case of age discrimination, because it is undisputed that Defendant replaced Plaintiff with an older worker. But Plaintiff need not establish a prima facie case when he can rely on direct evidence. Because of the alleged remarks suggesting age based animus, and for the same reasons spelled out above, a jury could conclude that Defendant was motivated to fire Plaintiff because of his age and health problems, not just for the asserted reason that his documentation was inadequate. Defendant argues the remarks are stray remarks that do not bear a relationship to the decisional process, but this court concludes that a reasonable jury could disagree.[17]

Defendant also argues for summary judgment by pointing to evidence of its favorable treatment of other old and infirm employees. Such comparative evidence does not defeat summary judgment as it not sufficiently probative of Frazer and Rapoza's specific decision to terminate Plaintiff.[18] Counts Five and Six also survive for trial.

### 4. Count Seven – Worker's Compensation retaliation

There is no temporal proximity between the worker's compensation leave Plaintiff took in

---

[17] See Hodgens, 144 F.3d at168 (noting the fact-bound nature of the inquiry in assessing claims that a proffered reason is pretextual).

[18] See Conward v. Cambridge Sch. Comm., 171 F.3d 12, 19 (1st Cir. 1999).

late 2003 and early 2004, and his discharge in August 2004.[19]  Plaintiff, therefore, would be required to rely on direct evidence to establish that Defendant acted with retaliatory animus by firing Plaintiff for taking worker's compensation leave seven months earlier.  While the alleged remarks do bear some indicia of hostility toward the Plaintiff based on his age and health, they do not directly relate to worker's compensation leave.  In fact, as Defendant points out, it had an opportunity to discipline Plaintiff in July 2004, but did not.  In this way, though the evidence identified above bears some indicia that could support a finding that the termination was motivated by animus over Plaintiff's recent leave or his age, the court does not discern any evidence of worker's compensation retaliation.  Summary judgment shall enter for the Defendant on Count Seven.

**Conclusion**

Plaintiff's Motion to Strike Defendant's Exhibit 15 is DENIED WITHOUT PREJUDICE to raising the issue at trial.  Defendant's Motion to Strike Portions of Additional Material Facts is DENIED, as explained above.  Defendant's Motion for Summary Judgment is ALLOWED IN PART AND DENIED IN PART.  Summary Judgment shall enter for the Defendant on Counts Three and Seven.  Counts Four, Five and Six shall proceed to trial.

An order will issue.                               /s/ Joseph L. Tauro
                                                   United States District Judge

---

[19] Cases trying to quantify temporal proximity are all over the map.  While some courts might find six and half months adequate, considering the facts of this case, the court does not find Plaintiff's winter 2003-2004 leave temporally proximal to his August termination.  See, e.g., Miller v. Lectra USA, Inc., 145 Fed. Appx. 315, 318 (11th Cir. 2005) ("This seven-month period between the two events is not 'very close' as to establish the necessary temporal proximity.").