UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
*****************************************
DANIEL GREENWOOD,                        *
                                         *
                Plaintiff,               *
                                         *
v.                                       *    Civil Action No. 05-10605 JLT
                                         *
YALE APPLIANCE AND LIGHTING, INC.,       *
                                         *
                Defendant.               *
*****************************************
```

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT'S MOTION FOR RECONSIDERATION

**A.    Introduction**

In a Memorandum opinion dated August 28, 2007, this Court entered summary judgment for Defendant Yale Appliance and Lighting, Inc. ("Yale") on Counts Three and Seven of the Complaint. This Court denied summary judgment as to Counts Four, Five and Six. As discussed within, Yale respectfully submits that the denial of summary judgment on these counts was based on an erroneous reading of the summary judgment record. When such error is corrected, summary judgment is appropriately entered for Yale.

**B.    Motions For Reconsideration Are Properly Granted When The Underlying Decision Is Based On A Misreading Of The Record.**

"A federal district court has the discretion to reconsider interlocutory orders and revise or amend them at any time prior to final judgment." Davis v. Lehane, 89 F.Supp.2d 142, 147 (D. Mass. 2000). "Motions for reconsideration are appropriate when a court has made an error of apprehension or law." Graham v. Malone Freight Lines, 43 F.Supp.2d 77, 78 (D. Mass. 1997), aff'd mem., 201 F.3d 427 (1st Cir. 1999). Accord, Davis v. Lehane, 89 F.Supp.2d at 78 (motions for reconsideration appropriate when "'initial decision was 'clearly erroneous and

would work a manifest injustice.'") (quoting Christianson v. Colt Industrial Operating Corp., 486 U.S. 800, 817 (1988) (quoting Arizona v. California, 460 U.S. 605, 618 n.8 (1983)).

C.  **This Court's Denial Of Summary Judgment On Count Four Is Based On Errors Of Fact and Law.**

Count Four of the Complaint alleges that Yale terminated Plaintiff's employment in retaliation for taking leave under the Family Medical Leave Act, 29 U.S.C. §2601 et seq. ("FMLA").[1] In the Memorandum opinion dated August 28, 2007, this Court referred, at the beginning of its analysis, to Yale's argument "that even if Plaintiff can establish a prima facie case, it [Yale] has adequately met its burden of showing that Plaintiff was fired for his consecutive unexcused absences, a non-retaliatory motive for the termination." (Memorandum at 8). This Court further found "Defendant's arguments...unconvincing because it has no evidence that [James] Rapo[z]a and [Lewis] Frazer were aware that Plaintiff had exhausted his FMLA time." (Id.) (emphasis added).[2]

Yale respectfully submits that this Court erred in finding "no evidence that Rapo[z]a and Frazer were aware that Plaintiff had exhausted his FMLA time." The Appendix to Yale's Motion for Summary Judgment included the following exchange from the deposition of Lewis Frazer, Yale's Vice President of Operations (to whom James Rapoza, Yale's Delivery Manager and Plaintiff's supervisor, reported):

Q.   Have you ever heard of a law called, "The Family Medical Leave Act"?

---

[1] While the FMLA "does not explicitly make it unlawful to discharge or discriminate against an employee for exercising her rights under the Act," the FMLA has been interpreted to provide such protection. See Hodgens v. General Dynamics Corp., 144 F.3d 151, 160 n.4 (1st Cir. 1998).

[2] Yale only has the burden of "articulat[ing] a legitimate nondiscriminatory reason for terminating [plaintiff's] employment." See Hodgens, 144 F.3d at 166. Plaintiff retains the burden of proof. See id.

A.   Yes.

Q.   <u>Before you fired Greenwood, or before he voluntarily resigned, in your view, did you consider whether or not Greenwood's absences might have been excused under the Family Medical Leave Act?</u>

A.   <u>Yes.</u>

Q.   <u>Did you conclude that they were not?</u>

A.   <u>Yes</u>.

(Frazer Deposition at 50-51, Exh. 11 to Defendant's Rule 56.1 Statement in Support of its Motion for Summary Judgment, Exh. A hereto) (emphasis added).

Thus, contrary to the assertion in this Court's Memorandum, Yale "has evidence...that" its Vice President of Operations, the individual who implemented Plaintiff's separation, had concluded that Plaintiff's days off from August 4-6, 2004, were <u>not</u> covered by the FMLA. Frazer's conclusion was correct. As noted in this Court's Memorandum (at 7), Plaintiff had exhausted his FMLA leave, in his best case, by July 30, 2004, when his hospitalization ended. Thus, his absence from August 4-6, those for which he was terminated, did not implicate the FMLA.

In light of the erroneous factual premise in this Court's analysis, the denial of summary judgment cannot be sustained. Given that there is "evidence" that Frazer was "aware that Plaintiff had exhausted his FMLA leave," Yale in fact "adequately met its burden of showing that Plaintiff was fired for his consecutive, unexcused absences, a non-retaliatory motive for the termination." (<u>Compare</u> Memorandum at 8).

The remainder of this Court's analysis on this claim falters because of this erroneous factual premise. This Court asserts (at 8) that "an inference of retaliatory animus could also be supported by the fact that Defendant appeared to have not properly requested medical

3

certification for the missed days." In support of this "inference," this Court cites to the requirements under the FMLA for medical certification of leaves, including the requirement of affording an employee an opportunity to cure deficiencies in documentation. (Memorandum at 8-9). As discussed, however, Plaintiff's absences at issue, i.e., those in August 2004, were not covered by the FMLA, given that he had exhausted his available leave under the statute. As such, Yale had no reason to require Plaintiff to provide medical certification in the form required by the FMLA for the absences in August, and a reasonable jury could not construe its failure to require certification in this form as evidence of an unlawful intent.

In further support of denying summary judgment, this Court states that on August 9, Yale should have given Plaintiff yet another opportunity to provide the requested information. (Memorandum at 9-10). Yale respectfully submits that this conclusion amounts to impermissible second-guessing of its business judgment, and is an insufficient basis for denying summary judgment. See Webber v. International Paper Co., 417 F.3d 229, 238 (1st Cir. 2005), cert. denied, 546 U.S. 1215 (2006) ("[A]n employer is free to terminate an employee for any nondiscriminatory reason, even if its business judgment seems objectively unwise."), citing Fennell v. First Step Designs, Ltd., 83 F.3d 526, 537 (1st Cir. 1996) ("We may not sit as super personnel departments assessing the merits -- or even the rationality -- of employers' nondiscriminatory business decisions.") (citation omitted). "By the same token, an employee's opinion of the efficacy of an employment decision, standing alone, cannot supplant the employer's business judgment." Webber, 417 F.3d at 238. Thus, whether or not Yale should

have afforded Plaintiff yet another opportunity to present the requested information is irrelevant to the question of its allegedly unlawful intent in terminating his employment.[3]

Moreover, a reasonable jury would have to engage in impermissible speculation to conclude that "Defendants simply wanted to get rid of an infirm worker who had just taken a lot of FMLA leave." (Memorandum at 10). Drawing all reasonable inference in Plaintiff's favor, his FMLA leave had begun in November 2003 -- nearly nine (9) months before his termination. (Compare Memorandum at 1). The long period of time between the onset of the FMLA leave and Plaintiff's separation negates any inference of unlawful motive. See Colburn v. Parker Hannifin/Nichols Portland Division, 425 F.3d 325, 337-338 (1st Cir. 1995) (summary judgment granted to employer on FMLA retaliation claim when plaintiff "began take to take leave in October 2001 and was not terminated until almost four months later, after he had taken more than twenty-five days of leave. This chronology raises no inference of retaliatory motive.").

In addition, no adverse action was taken against Plaintiff after he used up his FMLA leave effective July 30, 2004. It was not until after Plaintiff took even more time off, not covered by the FMLA, and failed to provide the requested documentation, that he was terminated. Had Plaintiff provided the requested documentation on August 9, there is not a shred

---

[3] As this Court found, Yale was requesting "medical authentication that he was unable to work, even at light duty." (See Memorandum at 2). After a week of requests, Plaintiff first presented a note stating he had no restrictions at all on activity. (See Memorandum at 2; See also Exh. 19 to Defendant's Rule 56.1 Statement in Support of its Motion for Summary Judgment). Thereafter, he presented the August 9 doctor's note. Regardless of whether this Court finds that a triable issue of material fact exists on whether the letter from Plaintiff's physician as provided on August 9 adequately addressed Plaintiff's ability to work in the preceding week, there is no genuine dispute that the letter did not address, explicitly, implicitly or otherwise, Plaintiff's ability or inability to perform light duty work.

of evidence that he would have been terminated. Allowing a jury to speculate about an unlawful motive under these circumstances is simply unwarranted.

In sum, this Court's denial of summary judgment on Count Four rests on a mistaken factual premise. In the absence of the mistaken "fact" cited by this Court, the only grounds for denying Yale's motion fall by the wayside. Yale cannot be reasonably faulted for not requiring certification pursuant to a statute that was inapplicable. Any criticism of Yale for not giving Plaintiff yet another chance to provide the requested information is contrary to the business judgment rule.

### D. **Denying Summary Judgment On Plaintiff's Age Discrimination Claims Was In Error**.

In denying summary judgment on Plaintiff's claims under Counts Five and Six for age discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. §621 <u>et seq</u>., and M.G.L. c.151B, this Court relied upon the same erroneous facts discussed above. This Court concluded that "[b]ecause of the alleged remarks suggesting age based animus, <u>and for the same reasons spelled out above</u>, a jury could conclude that Defendant was motivated to fire Plaintiff because of his age and health problems, not just for the asserted reason that his documentation was inadequate." (Memorandum at 10) (emphasis added). "The same reasons spelled out above" are those which led this Court to deny summary judgment on Plaintiff's claim of retaliation in violation of the FMLA. For the reasons discussed, such "same reasons" are insufficient to deny summary judgment as to Count Four. Likewise, such reasons should be inadequate to deny summary judgment as to the age discrimination claims.[4]

---

[4]In denying summary judgment on the age discrimination claims, this Court stated that "a jury could conclude that Defendant was motivated to fire Plaintiff for his age and health problems..." (Memorandum at 10). Plaintiff does not have a claim based on an alleged disability, or any other

This Court's analysis appears to assume that one alleged ageist comment, coupled with the replacement of the 41 year old Plaintiff with a 42 year old, is insufficient to create a triable issue of material fact on the age discrimination claims and that Yale would be entitled to summary judgment on these claims, were no other evidence available in the record. Otherwise, any reliance on "the same reasons spelled out above" would be superfluous. But when "the same reasons spelled out above" fall by the wayside, as they must, "the totality of the circumstances," see Speen v. Crown Clothing Corp., 102 F.3d 625, 636 (1st Cir. 1996), forecloses any legitimate basis for denying Yale's motion. The "totality of the circumstances" must include the replacement of Plaintiff with an older employee, and the fact that younger workers who did not comply with the same rules were terminated, while older workers who complied were retained. (Memorandum at 4, 10; *See also* Defendant's Local Rule 56.1 Statement in Support of Its Summary Judgment Motion at pars. 59, 61; and Plaintiff's Response to Defendant's Local Rule 56.1 Statement at pars 59, 61). In light of these undisputed facts, which are wholly at odds with a conclusion of age discrimination, no reasonable factfinder could conclude that Yale's termination of Plaintiff's employment was motivated by his age. See Speen v. Crown Clothing Corp., 102 F.3d at 636 ("If we consider [statement constituting direct evidence of age discrimination] in the context of all the evidence, which we must do, since we are not afforded the luxury of selectively picking and choosing what evidence we will consider, we conclude that [lower court] was correct in ruling that there was insufficient evidence for a jury to draw a reasonable inference that [plaintiff] was fired due to his age or permit a reasonable inference that [the employer's] proffered reason for terminating [plaintiff]…was pretextual.").

---

health problem. The alleged unlawful retaliation under the FMLA is distinct from any claim based on Plaintiff's "health."

**E**.       **Conclusion**

For the reasons set forth above, and the reasons set forth in the pleadings previously filed, Yale's Motion for Summary Judgment should be granted as to Counts Four, Five and Six.

Respectfully submitted,

YALE APPLIANCE AND LIGHTING, INC.,

By its attorneys,

/s/Tracy Thomas Boland
Jaclyn Kugell (BBO# 561622)
Tracy Thomas Boland (BBO# 638878)
MORGAN, BROWN & JOY, LLP
200 State Street
(617) 523-6666

Dated: September 10, 2007

**CERTIFICATE OF SERVICE**

I, Tracy Thomas Boland, hereby certify that I have caused a copy of the foregoing to be served upon Plaintiff's attorney, Daniel W. Rice, Glynn, Landry, Harrington & Rice, LLP, 10 Forbes Road, Braintree, MA 02184, by ECF on this 10thday of September, 2007.

/s/ Tracy Thomas Boland
Tracy Thomas Boland

# **EXHIBIT A**

# DEPOSITION OF LEWIS FRAZER

November 22, 2006

<u>Daniel Greenwood v. Yale Appliance and Lighting, Inc.</u>
United States District Court
District of Massachusetts
C.A. No. 05-10605 JLT
Linda M. Thomas, Registered Merit Reporter

KATHLEEN A. GARDNER
Registered Professional Reporter
11 Roman Avenue
Danvers, MA 01923
(978) 777-3574

Deposition of Lewis Frazer
Daniel Greenwood v. Yale Appliance and Lighting, Inc.
November 22, 200*

**Page 49**

1  A. It is a pretty long question.
2  Q. Is there somebody out there telling Yale
3  Electric, to your knowledge, that Greenwood was at the
4  pig roast and not acting consistent with somebody who
5  couldn't report to work?
6  A. There was an employee of Yale who was at the
7  pig roast who was Dan's nephew. Beyond that, I don't
8  understand your question. Peter Greenwood.
9  Q. To your knowledge, has Peter told somebody
10 at Yale Electric, or representing Yale Electric that
11 Dan was at the pig roast and not acting in a manner
12 consistent with somebody who just got discharged from
13 the hospital?
14 A. Ask the question again.
15 Q. I will try to simplify it. Has Peter
16 Greenwood told you, or anybody that you know of, that
17 Dan was enjoying himself at the pig roast?
18 A. What do you mean "enjoying himself"?
19 Q. How do you enjoy yourself at a pig roast?
20 Drinking beer, eating the pig, eating pig?
21 A. I can't comment as to what Peter Greenwood
22 will say.
23 Q. What is your knowledge of it? I don't know
24 what Peter is going to say, either, but what is your

**Page 50**

1  knowledge?
2  A. I have no knowledge what occurred at the pig
3  roast.
4  Q. During the time that Dan was out of work,
5  were you aware --
6  A. Which point in time out of work?
7  Q. Between July and August right before August
8  9th when he got fired?
9  A. Yes.
10 Q. Had you received information that he was at
11 the pig roast?
12 A. No.
13 Q. So, the fact that he might have had a pig
14 roast at his house, did that have any impact at all on
15 your decision to fire him?
16 A. None.
17 Q. Have you ever heard of a law called, "The
18 Family Medical Leave Act?
19 A. Yes.
20 Q. Before you fired Greenwood, or before he
21 voluntarily resigned, in your view, did you consider
22 whether or not Greenwood's absences might have been
23 excused under the Family Medical Leave Act?
24 A. Yes.

**Page 51**

1  Q. Did you conclude that they were not?
2  A. Yes.
3    MS. KUGELL: Objection. I don't want
4  to get into discussion with counsel.
5    MR. RICE: Okay. That is probably
6  enough.
7  BY MR. RICE:
8  Q. Did you make a review of his attendance file
9  before you decided to fire him?
10 A. I don't remember.
11   MR. RICE: Can we go off the record?
12   (Off-the-record discussion)
13   MR. RICE: I don't have any further
14 questions for you, Mr. Frazer.
15   MS. KUGELL: I have just a couple of
16 small questions.
17
18         **CROSS EXAMINATION**
19 BY MS. KUGELL:
20 Q. In July of 2004, do you recall what position
21 Mr. Phil Conroy was in?
22 A. Phil Conroy was in a helper position at that
23 point in time.
24 Q. And, at some point in August of 2004, or

**Page 52**

1  thereabouts, did he assume another position?
2  A. He was Dan Greenwood's direct replacement as
3  a delivery driver.
4  Q. Now, there has been a whole lot of
5  discussion about something called a "Vocational
6  Assessment" during your deposition, Mr. Frazer.
7  Before today, was that a term that you were familiar
8  with?
9  A. No.
10 Q. Is "Vocational Assessment" a term that is
11 regularly used at Yale Electric?
12 A. No.
13 Q. Specifically, what is it that you asked Mr.
14 Greenwood for relative to his ability to perform work?
15 A. We had asked him, specifically, as to what
16 he can and cannot do in terms of light duty, in terms
17 of full duty. What were the restrictions on his
18 activity? What we were provided with, and after
19 asking for numerous times, was first the release from
20 the hospital that provided no restrictions on his
21 activity; and then secondly, a doctor's note that
22 provided no information as to the restrictions on his
23 activity.
24 Q. And, the second document you are referring